## S91A1186. MACON-BIBB COUNTY BOARD OF TAX ASSESSORS et al. v. ATLANTIC SOUTHEAST AIRLINES, INC.

### (414 SE2d 635)

BENHAM, Justice.

In 1983, Atlantic Southeast Airlines ("ASA") leased from the Macon-Bibb County Industrial Authority ("the Authority") an airport maintenance facility at the Lewis B. Wilson Municipal Airport, which is owned by the City of Macon. In 1988, when ASA desired a larger facility, the city leased land to the Authority for the construction of a larger hangar for ASA, and the Authority immediately executed a sublease for a 30-year term with ASA.[1] Construction was completed in 1989, and the Macon-Bibb County Board of Tax Assessors sent ASA an ad valorem tax notice for 1990. After the Board of Equalization upheld the decision of the tax assessors, ASA appealed to the superior court which ruled that ASA's interest was a non-taxable usufruct. The Authority appeals from that decision.

OCGA § 48-5-3 defines "taxable property" as "[a]ll real property including, but not limited to, leaseholds, interests less than fee, and all personal property. . . ." One who accepts the grant of "the right simply to possess and enjoy the use of the real estate" has a usufruct (OCGA § 44-7-1 (a)) and acquires no taxable interest in the land. *Whitehead v. Kennedy*, 206 Ga. 760, 761 (58 SE2d 832) (1950). On the other hand, one who accepts an estate for years has "the right to use the property in as absolute a manner as may be done with a greater estate, provided that the property or the person who is entitled to the remainder or reversion interest is not injured by such use" (OCGA § 44-6-103), and the estate is subject to ad valorem taxation. *Delta Air Lines v. Coleman*, 219 Ga. 12 (1) (131 SE2d 768) (1963).

A lease of real estate for a period of less than five years is presumed to be a non-taxable usufruct (OCGA § 44-7-1 (b)), and there is a rebuttable presumption that a lease for five years or more is a taxable estate for years. *Warehouses, Inc. v. Wetherbee*, 203 Ga. 483 (3) (46 SE2d 894) (1948). "Whether . . . an estate in the land passes to the tenant, or he merely obtains a usufruct . . . depends upon the intention of the parties; and this is true without regard to the length of the term." *Hutcheson v. Hodnett*, 115 Ga. 990, 993 (42 SE 422) (1902). In the sublease of land to ASA from the Authority, the parties expressly acknowledged that ASA's interest created by the lease did not create "a leasehold subject to ad valorem taxes because of the

---

[1] By including the Authority in the leasing plans, industrial revenue bonds issued by the Authority could be used to finance the construction of the hangar. ASA and the Authority entered into an agreement called the "Project Agreement" that outlined the parties' rights and duties with regard to the issuance of the industrial bonds and the use of the revenue therefrom.

restricted nature of the granting of the right . . .," and the parties agreed in the "Project Agreement" that ASA's interest "is a usufruct and not an estate for years. . . ." If the present case were between private parties, such express statements of intent would control. *Allright Parking of Ga. v. Joint City-County Bd. of Tax Assessors*, 244 Ga. 378, 386 (260 SE2d 315) (1979); *Warehouses, Inc. v. Wetherbee*, supra, hn. 3. However, because this is a tax dispute between ASA and the taxing authority of the City of Macon and Bibb County, we must scrutinize the remaining provisions in the sublease and the Project agreement to determine whether various restrictions contained therein, limiting ASA's use of the premises, overcome the presumption that ASA has a taxable estate for years. *Allright Parking*, supra; *Camp v. Delta Air Lines*, 232 Ga. 37, 40 (205 SE2d 194) (1974).

The sublease provided that the Authority could retake possession of specified portions of the leased premises at any time during the thirty-year lease and the two five-year option periods upon ninety-day written notice, if the areas were needed for use as a proposed taxi lane. The hangar, to be built pursuant to the Project Agreement, was to be financed through the issuance and sale of the Authority's industrial revenue bonds, and the City was to gain title upon payment of the bonds. ASA was to pay monthly rent of $2,076.53, as well as a "service payment" of $1,160 per month. The City agreed to provide fire and police protection as services. ASA was also to pay, as additional rent, one cent per gallon of aircraft fuel it loaded in Macon into the tanks of its aircraft which fuel it did not purchase from a vendor who was a direct or indirect lessee from the City. The leased property was to be used primarily as a site for aircraft storage and maintenance, but could be used for any lawful purpose as long as it was "not in conflict with the normal operations of the Airport." ASA could not sublet or assign its interest, or place signs on exterior walls or the roof of the hangar without the written consent of the City and the Authority.[2] ASA agreed that it would not discriminate or permit discrimination on the basis of race, sex, color or national origin in any manner prohibited by the Federal Aviation Regulations or the regulations promulgated by the Department of Transportation in its use of the leased premises. In addition, ASA assured the City and Authority it would undertake an affirmative action program.

In the 60-page Project Agreement, ASA and the Authority provided for the building of the hangar and the issuance of the bonds

---

[2] The lease provided that the City and the Authority could not unreasonably, capriciously or arbitrarily withhold their consent. Concerning the assigning or subletting of the sublease, the sublease also provided that assignment or subletting was permissible upon the City's or Authority's consent, provided the "Project Agreement" also permitted assignment or subletting. The "Project Agreement" so permits.

underwriting the costs. In order to maintain the tax-exempt status that the interest income from the bonds enjoyed, ASA agreed to comply with IRS and Department of Treasury rulings and regulations, to restrict the use of office space in the maintenance facility, and to use the bond proceeds in a manner that would not endanger the tax-exempt status.

The sublease's restrictions on ASA's ability to sublet or assign, or to erect signs without permission of the city or Authority, indicate a usufruct. *Allright Parking,* supra; *Camp v. Delta,* supra; *Southern Airways Co. v. DeKalb County,* 216 Ga. 358 (116 SE2d 602) (1960); *Richmond County Bd. of Tax Assessors v. Richmond Bonded Whse. Corp.,* 173 Ga. App. 278 (325 SE2d 891) (1985); *Clayton County Bd. of Tax Assessors v. City of Atlanta,* 164 Ga. App. 864 (1) (298 SE2d 544) (1982). The sublease's provision that the premises could not be used in a discriminatory manner violative of federal rules and regulations, and the Project Agreement's directive that IRS and Treasury rulings and regulations be followed indicate "the high degree of control retained by the Authority." *Richmond County,* supra at 280. See also *Camp,* supra; *Southern Airways,* supra. The sublease's restriction on the use to which the leased premises could be put (an aircraft maintenance and storage facility or a lawful use that did not conflict with the normal operations of the airport), and the Project Agreement's limitation on the use of office space within the hangar are also evidence of a usufruct. *Camp v. Delta,* supra. That the Authority could take back certain portions of the leased premises by giving 90-day written notice of that intent; that ASA had to implement an affirmative action program; and the requirement that ASA had to pay additional rent if it did not purchase its aircraft fuel from lessees or sub-lessees of the City illustrate that ASA did not have an estate for years and the concomitant "right to use the property in as absolute a manner as may be done with a greater estate." OCGA § 44-6-103. The required monthly "service payment," in exchange for which the City provided fire and police protection, could be intended to provide the City with a replacement for the tax revenue that the City would receive were ASA's interest in the property taxable.

That among these restrictions are some that may be reasonable and appropriate under the circumstances does not make them compatible with an estate for years as defined by Georgia law. *Camp v. Delta,* supra. Since the sublease and the "Project Agreement" greatly restrict ASA's ability to use the property "in as absolute a manner as may be done with a greater estate" (OCGA § 44-6-101), we conclude, as did the trial court, that ASA successfully rebutted the presumption that the 30-year lease was an estate for years.

*Judgment affirmed. Bell, J., Judge T. Penn McWhorter and Judge Shepherd Lee Howell concur; Weltner, P. J., and Hunt, J.,*

*concur in the judgment only; Fletcher, J., dissents; Clarke, C. J., not participating.*

DECIDED MARCH 6, 1992 —
RECONSIDERATION DENIED APRIL 2, 1992.

*Groover & Childs, Denmark Groover, Jr.,* for appellants.

*Alston & Bird, G. Conley Ingram, John L. Coalson, Jr., Helene Z. Cohen,* for appellee.