A92A2346, A92A2347, A92A2348. HUNTINGDON II, LTD. v. CHATHAM COUNTY BOARD OF TAX ASSESSORS (three cases).
(428 SE2d 605)

ANDREWS, Judge.

This is a consolidated appeal from the Chatham County Superior Court's grant of summary judgment to the Chatham County Board of Tax Assessors in this case which involves the taxability of certain property owned by appellant, Huntingdon II, Ltd. At issue here is whether the agreement between Huntingdon and its tenant, Tidelands Community Mental Health Center ("Tidelands") conveyed an estate for years or a usufruct. The superior court determined that the agreement between the two created a usufruct, a non-taxable interest; this determination effectively revoked the tax-exempt status of the property. In these three cases, Huntingdon appeals.

In 1989, Huntingdon and Tidelands entered into an agreement under which Tidelands was granted the right to use approximately 100,000 square feet of space at the Old Candler General Hospital Building. Tidelands is a community health, mental retardation and substance abuse center and was leasing the space for its outpatient program.

On April 3, 1990, the Chatham County Board of Tax Assessors notified Huntingdon that its tax-exempt status was revoked. After an

unsuccessful hearing before the Chatham County Board of Equalization, Huntingdon filed an appeal in the superior court. Huntingdon filed a motion for partial summary judgment and the court determined that the interest in the property conveyed was a usufruct, and thus denied appellant's motion and granted summary judgment to the county.

At the outset, we note that jurisdiction in this court is proper. See *DeKalb County Bd. of Tax Assessors v. W. C. Harris & Co.*, 248 Ga. 277 (1) (282 SE2d 880) (1981).

Huntingdon argues that the agreement at issue conveyed a leasehold estate because of certain language in the contract which evidences this intent. The agreement states: "it is the intent of the parties to create a leasehold estate . . . and not a mere usufruct." Accordingly, the document refers to the document as a "lease" and to Huntingdon and Tidelands as "lessor" and "lessee."

In addition to the lease terminology which Huntingdon claims supports its construction, Huntingdon points out that the lease requires the lessee to repair and maintain the premises and to pay all costs of maintenance (see below), utilities, janitorial services and security. The lease also provides that the lessee may assign or sublease the devised premises without the lessor's consent.

In determining that the interest here was a usufruct, the trial court found that the contract was not vague or ambiguous. The lease states that its initial term was for seven months, but provides for automatic renewals for ten consecutive one-year periods, provided the program was funded by the General Assembly. The trial court concluded that the lease was a year-to-year one, that it was structured in this manner so that if no funding was available, the lease would terminate without penalty to Tidelands. The trial court found that under the lease terms, Huntingdon was responsible for all insurance, taxes, and upkeep of the premises, including maintenance and repairs.

Our review of the lease reveals that the lease specifically provided that the lessor was responsible for all "structural, electrical, plumbing, elevators, heating and air conditioning system repairs and maintenance as well as repairs and maintenance to exterior walls, roofs and parking areas of the demised [sic] premises as they become necessary." The lease also provided that the lessor was responsible for replacing any heating or air conditioning equipment in the event it became inoperative, and that it was responsible for all pest control services and all landscape maintenance. The document allowed Tidelands the use of 120 parking spaces. The lease provided that upon request by Tidelands, Huntingdon would make "alterations dictated by programmatic needs." Tidelands' obligation to maintain the property was limited to that not outlined as the lessor's responsibility.

Under the lease Tidelands was permitted to sublet the property.

We agree with the trial court's determination that the interest conveyed here was a usufruct. OCGA § 44-7-1 provides guidelines regarding the landlord and tenant relationship, the rights of the tenant and the construction of leases for less than five years. That section states that the relationship of landlord and tenant is created when the owner of real estate grants to another person the right to possess and enjoy the use of real estate for a fixed period of time or at the will of the grantor. In subsection (b), the statute provides: "All renting or leasing of real estate for a period of time less than five years shall be held to convey only the right to possess and enjoy such real estate, to pass no estate out of the landlord, and to give only the usufruct unless the contrary is agreed upon by the parties to the contract and is so stated in the contract." OCGA § 44-6-101 codifies the distinction between an estate for years and the landlord/tenant relationship. That statute states: "As applied to realty, an estate for years does not involve the relationship of landlord and tenant, in which relationship the tenant has no estate but merely has a right of use which is very similar to the right of a hirer of personalty." OCGA § 44-6-103 provides for an estate for years.

"One who accepts the grant of the right simply to possess and enjoy the use of the real estate has a usufruct and acquires no taxable interest in the land. On the other hand, one who accepts an estate for years has the right to use the property in as absolute a manner as may be done with a greater estate, provided that the property or the person who is entitled to the remainder of reversion interest is not injured by such use, and the estate is subject to ad valorem taxation." (Citations and punctuation omitted.) *Macon-Bibb County Bd. of Tax Assessors v. Atlantic Southeast Airlines*, 262 Ga. 119 (414 SE2d 635) (1992).

"A lease of real estate for a period of less than five years is presumed to be a non-taxable usufruct, and there is a rebuttable presumption that a lease for five years or more is a taxable estate for years. Whether an estate in the land passes to the tenant, or he merely obtains a usufruct depends upon the intention of the parties; and this is true without regard to the length of the term." (Citations and punctuation omitted.) Id. at 119.

In the instant case, the lease specifically states that it intends to convey a leasehold interest, not a usufruct. Because this is a tax dispute between Huntingdon and the taxing authority of Chatham County, this statement of intent does not control and we must scrutinize the provisions of the lease to determine the interest conveyed to Tidelands. See id.; *Allright Parking of Ga. v. Joint City-County Bd. of Tax Assessors*, 244 Ga. 378, 386 (260 SE2d 315) (1979); *Camp v. Delta Air Lines*, 232 Ga. 37, 40 (205 SE2d 194) (1974).

We conclude that the amount of control which Huntingdon maintained over the property, in terms of its responsibilities for repairs and for payment of insurance and taxes, indicates a usufruct. Moreover, the lease term and the provisions with respect to Tidelands' annual funding and corresponding year-to-year lease indicate a usufruct. Although no restrictions were put on Tidelands' use of the property, the pervasiveness of Huntingdon's control over the property demonstrates that the interest conveyed was a usufruct.

Accordingly, the trial court's finding that the interest created was a usufruct and its concomitant grant of summary judgment to appellee was proper.

*Judgments affirmed. Birdsong, P. J., and Beasley, J., concur.*

DECIDED FEBRUARY 23, 1993.

*Weinstein, Rosenthal, Tobin & Caldwell, A. Keith Logue,* for appellant.

*Howard & Racz, Molly M. Howard, Hunter, Maclean, Exley & Dunn, Wade W. Herring II,* for appellee.