A03A2276, A03A2317. DIVERSIFIED GOLF, LLC v. HART COUNTY BOARD OF TAX ASSESSORS (two cases).
(598 SE2d 791)

ADAMS, Judge.

The City of Hartwell acquired land to create a spray field for disposing treated wastewater, then decided to develop a municipal golf course on the property, which could be irrigated with the water. The city conveyed the property to a newly established recreation authority, which then leased the land to Diversified Golf, LLC, a private concern formed to develop, construct, and operate the golf course. When Hart County later assessed Diversified for ad valorem taxes based on the value of the land and improvements, Diversified began a series of appeals regarding whether its interest in the land is taxable. That issue is now before us.

The basic facts are undisputed. Apparently in response to a mandate from the Georgia Environmental Protection Division to find an alternative to disposing wastewater in a creek, the City of Hartwell acquired 445 acres of land to use as a spray field for treated wastewater. In response to public opposition to the original plan, the city

---

[7] See *Lanier Home Center*, supra at 748 (5).

decided to develop a municipal golf course on a portion of the property. The City of Hartwell Recreation Authority was created by local act to, among other things, facilitate low cost financing with revenue bonds, acquire real property, and lease property, both in connection with city recreation projects — including the proposed golf course — and construction of waste treatment facilities. Ga. L. 1996, p. 3998. The city then conveyed the parcel to the authority. The limited warranty deed transferred the property to the authority in fee simple in consideration of the public purposes to be served by the authority, and it was recorded on August 19, 1996. It appears that the golf course is not located in the city.

In that same year, the authority entered into several agreements relative to the property, including a fifty-year lease agreement with Diversified; a "Waste Water Effluent Spraying and Operating Agreement" with Diversified; three construction contracts in which Diversified agreed to build a golf course, clubhouse, wastewater distribution facility, and wastewater storage ponds; and an intergovernmental contract between the city and the authority. In early 1997, the golf course became operational. The golf course occupies approximately 60 of the 445 acres, but almost all of the property is used as a spray field for disposal of the wastewater.

In 1999, Hart County issued a tax assessment notice to Diversified assessing the taxable value of Diversified's interest in the property at $4,024,000. Diversified initiated an appeal of the assessment to the Hart County Board of Tax Assessors. On April 19, 2000, the board conducted a hearing that apparently also addressed the year 2000 assessment, and on August 7, 2001, denied Diversified's appeal. The matter was automatically forwarded to the Board of Equalization. On November 12, 2001, that board conducted a hearing and issued a decision, which states,

> Because of the significant restrictions on the lessee's ability to use the Property as they please, we feel that the buildings only are taxable, this amount is $491,950. This agreement meets the criteria for usufruct interest.

Both Diversified and the Board of Tax Assessors appealed the decision to the Superior Court of Hart County.[1] The parties submitted cross-motions for summary judgment, and on June 2, the court entered an order granting the Assessors' motion and denying Diversified's. The court held that the property was not public property

---

[1] The matter was treated as two cases in the superior court and two appeals have been filed. The two cases are hereby consolidated on appeal.

exempt from ad valorem taxation and that Diversified's interest in the property was a taxable estate for years and not a nontaxable usufruct. Diversified appeals.

Diversified contends that the trial court erred by concluding that its interest in the property is a taxable estate for years, rather than a nontaxable usufruct.

"All real property including, but not limited to, leaseholds, interests less than fee, and all personal property shall be liable to taxation and shall be taxed, except as otherwise provided by law." OCGA § 48-5-3. But a usufruct is not considered an interest in land and therefore it is not subject to ad valorem taxation. *Macon-Bibb County Bd. of Tax Assessors v. Atlantic Southeast Airlines*, 262 Ga. 119 (414 SE2d 635) (1992); *Whitehead v. Kennedy*, 206 Ga. 760, 761 (58 SE2d 832) (1950). A leasehold interest that constitutes an estate for years is taxable. *Delta Air Lines v. Coleman*, 219 Ga. 12, hn. 1 (131 SE2d 768) (1963).

A usufruct occurs where one accepts the grant of "the right simply to possess and enjoy the use of such real estate. . . ." OCGA § 44-7-1 (a). An estate for years occurs where one accepts "the right to use the property in as absolute a manner as may be done with a greater estate, provided that the property or the person who is entitled to the remainder or reversion interest is not injured by such use." OCGA § 44-6-103. There is a rebuttable presumption that a lease for five years or more is a taxable estate for years. *Macon-Bibb County Bd. of Tax Assessors*, 262 Ga. at 119. But, "[w]hether . . . an estate in the land passes to the tenant, or he obtains merely the usufruct . . . depends upon the intention of the parties; and this is true without regard to the length of the term." *Hutcheson v. Hodnett*, 115 Ga. 990, 993 (42 SE 422) (1902). Accord *Macon-Bibb County Bd. of Tax Assessors*, 262 Ga. 119.

> Not unexpectedly, there are numerous cases involving leases which have some provisions characteristic of the conveyance of an estate for years along with others indicative of the grant of a mere usufruct. In such cases, of which this is one, all provisions of the lease must be scrutinized objectively to determine whether the legal effect of the agreement is to grant an estate in the property or merely a right of use.

(Footnotes omitted.) *Jekyll Dev. Assoc. v. Glynn County Bd. of Tax Assessors*, 240 Ga. App. 273, 274-275 (2) (523 SE2d 370) (1999).

The lease at issue has a 50-year term and therefore the presumption of an estate for years applies. The question before us is whether that presumption is rebutted by the intention of the parties as reflected in the terms of the lease. Although "[a]n estate for years may

be encumbered or somewhat limited without being reduced to a usufruct," *Jekyll Dev. Assoc.*, 240 Ga. App. at 275 (2), if the lease imposes sufficient conditions and limitations upon the use of the premises to negate the conveyance of an estate for years the interest passed is reduced to a mere usufruct. *Warehouses, Inc. v. Wetherbee*, 203 Ga. 483, 489 (46 SE2d 894) (1948). See also *Macon-Bibb County Bd. of Tax Assessors*, 262 Ga. at 120.

We begin by assessing the parties' intent by looking at the general characteristics of the lease as a whole. See *Warehouses*, 203 Ga. at 488; *Richmond County Bd. of Tax Assessors v. Richmond Bonded Warehouse Corp.*, 173 Ga. App. 278, 279 (325 SE2d 891) (1985). Although the parties termed the instrument a lease, they did not specifically state in the lease whether they intended an estate for years or a usufruct. At one point, Diversified's rights are described as "possession, use or occupancy" of the golf course. This phrase suggests a usufruct.

The parties agreed to several provisions related to ad valorem taxation, at least some of which suggest that they intended Diversified's interest to be a usufruct. The parties to the lease first acknowledged that the authority's interest in the property is not subject to ad valorem taxation by the state or any subdivision thereof. And Diversified agreed that it was liable for all taxes and governmental charges on any interest it held pursuant to the lease and on the golf course or any equipment or related property, as well as the following:

> All taxes and governmental charges of any kind whatsoever upon or with respect to the Golf Course or any equipment or related property installed or brought by the Developer therein or thereon (including, without limiting the generality of the foregoing, any taxes levied upon or with respect to the income or profits of the Authority from the Golf Course which, if not paid, will become a lien on the Golf Course prior to or on a parity with the security interest created hereunder or a charge on the Revenues prior to or on a parity with the security interest therein).

But, the lease also provides that Diversified could contest any such tax and that the authority would cooperate with Diversified in doing so. Therefore these provisions are inconclusive of the parties' intent. See, e.g., *Clayton County Bd. of Tax Assessors v. City of Atlanta*, 164 Ga. App. 864, 865-866 (1) (298 SE2d 544) (1982) (usufruct created despite provision in lease that lessee was liable for any taxes and any assessment levied on the property).

However, Diversified agreed to pay to the city, from 2018 through 2046 (the end of the lease term), "an amount equal to the ad valorem

property taxes that would be paid to City if the golf course was located in the City assuming that the Developer was the fee simple title owner of the Golf Course." This provision suggests that the parties intended a usufruct. Otherwise, Diversified would, in effect, be required to pay double the normal ad valorem taxation on the property during the years 2018 through 2046: actual ad valorem taxes to Hart County and a contractual equivalent to the city.

Finally, the authority agreed that it would protect the ad valorem tax exemption on its interest in the property and the property in general, the language of which suggests that it intended to protect Diversified from ad valorem taxation:

> The Authority agrees that, it shall not (a) sell, assign, transfer or convey the Golf Course during the Term of this Lease, or (b) take any other action which might reasonably be constructed as tending to cause or induce the levy or assessment of ad valorem taxes on the Golf Course or on its title in and to the Golf Course.

In short, some aspects of the agreement as a whole suggest that the parties intended a usufruct.

We next consider the specific provisions of the lease. By far the most important restriction in the lease is that Diversified must accept all treated municipal wastewater sent to it and spray it on the property. The lease also requires Diversified to develop, construct, operate, and maintain a public golf course for the purpose of providing recreational facilities for the benefit of the local residents, but the lease regulates how Diversified can operate the golf course, and it makes clear that wastewater treatment overrides any other use of the property, even the golf course. Section 5.12 of the lease provides:

> The Golf Course will be used and is being constructed in part as a land application system for the sewage and waste water of the City (the "Waste Water"). The Developer shall accept all Waste Water received by the Authority or the City for the application on the leased land. In the event there is any conflict between the needs of the Golf Course and the needs of the Waste Water disposal, the Waste Water disposal requirements shall have absolute priority.

The lease also provides that Diversified's use of the property is further restricted by applicable state law regarding wastewater treatment:

> The irrigation system shall be operated to comply fully with all requirements of the Georgia Environmental Protection Division and Urban Water Reuse, and records will be kept regarding the location and volume of Waste Water applied to the irrigation site.

In fact, in the first four years, 996 million gallons of wastewater was sprayed on the property. In short, use of the property is significantly restricted by the two required uses.

Next, the lease places several significant restrictions on Diversified that relate to ownership of property which show a significant degree of dominion and control by the authority over the property. First, Diversified is not permitted to "sell or otherwise dispose of the Golf Course or any integral part thereof," nor allow any lien, security interest, or charge on the property. And Diversified is required to place title in the authority to any real or tangible personal property it acquires in connection with the project. All such property becomes part of the "Golf Course," which, the lease indicates, refers to the entire property. Diversified is required to maintain adequate insurance on all property, with the authority named as an "additional insured" on all policies. It is even required to keep the financial records for the golf course separate from its own books and to allow the authority or the bondholders to inspect them. The authority retained the right to impose easements, licenses, rights-of-way, and "other rights or privileges in the nature of easements" with respect to the property. Finally, in connection with eminent domain proceedings, title to any and all property or improvements acquired by Diversified shall be vested in the authority.

Although the lease allows Diversified to sublease the golf course or assign its interest without the consent of the authority, which would suggest an estate for years, *Clayton County Bd. of Tax Assessors*, 164 Ga. App. at 866, Diversified is required, while the bond is unpaid, to obtain written consent of a majority of the bondholders. And the bondholders are specifically named as third-party beneficiaries of the lease with all the rights of the authority under the lease. Thus, this provision, standing alone, does not add light to the question of whether a usufruct or an estate for years was intended.

Several other provisions of the lease impose additional restrictions on Diversified. The lease requires Diversified to act as the authority's agent for the development and construction of the golf course; to obtain all necessary approvals from any governmental agencies and to comply with all applicable laws; to develop the golf course as described in the "Project Report" and to obtain the authority's approval for all change orders; to maintain its corporate existence

while the bonds are outstanding; to remain a limited liability company for the term of the lease; to operate economically, efficiently, and consistently with good business practices and with standards established by the United States Golf Association for municipal courses; to employ a reasonable number of employees, pay reasonable salaries, and keep the course in good repair; and to pay all costs of operating, maintaining, and repairing the golf course. Diversified is only entitled to pay itself a management fee after the bonds are paid, and it may only hire a management company with the consent of the authority. The authority maintains a right to examine and inspect the golf course. Finally, the authority can terminate the lease upon default.

We conclude that Diversified took a nontaxable usufruct. It has been said that a usufruct exists where the lessee takes only "a circumscribed and limited use of the premises and facilities," (punctuation omitted) *Camp v. Delta Air Lines*, 232 Ga. 37, 40 (205 SE2d 194) (1974), where "the restrictions imposed . . . are so pervasive as to be fundamentally inconsistent with the concept of an estate for years," *Allright Parking of Ga. v. Joint City-County Bd. of Tax Assessors &c.*, 244 Ga. 378, 387 (3) (260 SE2d 315) (1979), or where the owner retains "dominion and control" over the property or the business operated thereon. See *Buoy v. Chatham County Bd. of Tax Assessors*, 142 Ga. App. 172, 173 (235 SE2d 556) (1977).

Here, the provisions of the lease show that the authority retained dominion and control over the property and that Diversified took only a circumscribed and limited use of the premises. See, e.g., *Macon-Bibb County Bd. of Tax Assessors*, 262 Ga. at 120-121 (other restrictions in thirty-year lease of airport maintenance facility sufficient to establish usufruct even though the property could be used for any lawful purpose not in conflict with normal operations of airport); *Eastern Air Lines v. Joint City-County Bd. of Tax Assessors*, 253 Ga. 18 (315 SE2d 890) (1984) (nature of restrictions in thirty-year lease indicated that parties intended to convey only usufruct); *Fulton County Bd. of Assessors v. McKinsey & Co.*, 224 Ga. App. 593, 595 (2) (481 SE2d 580) (1997) (other restrictions in lease of greater than five years sufficient to rebut presumption of an estate for years even though use of space only restricted to office space); *Richmond County Bd. of Tax Assessors*, 173 Ga. App. 278 (restrictions in fifty-year lease sufficient to establish usufruct where, among other things, use restricted to warehouse use, warehouse built according to plans approved by the authority/lessor, and the lessee agreed to conform to all laws and regulations).

We also find the arguments of the Board of Tax Assessors to be unpersuasive. The board argues that Diversified received an estate for years based on its construction of the statutory definition of that

term. The definition states that an estate for years is created where one accepts "the right to use the property in as absolute a manner *as may be done with a greater estate. . . .*" (Emphasis supplied.) OCGA § 44-6-103. The board argues that because the authority's right to use the property was also restricted to the same degree as Diversified's use, Diversified was able to use the property "in as absolute a manner" as the authority. Therefore it took an estate for years.

The board offers no authority for this position, and we find it to be illogical. For example, if as a result of the restrictions placed on the authority's use of the property, it took only a usufruct from the city, but Diversified took all of the rights of the authority under its lease, then, following the argument of the board, Diversified would have an estate for years. Yet no grantee can take a greater interest than his or her grantor had. *Yaali, Ltd. v. Barnes & Noble, Inc.*, 269 Ga. 695, 696 (1), n. 3 (506 SE2d 116) (1998). Rather, taken in context, the phrase "a greater estate" in OCGA § 44-6-103 can only be construed to mean an estate greater than an estate for years, for example, a fee simple interest.

Similarly, the trial court concluded that many of the restrictions facing Diversified were restrictions placed on the authority that merely passed through to Diversified or were obligations that duplicated obligations placed on Diversified by other of the various agreements that were executed as a part of the transaction. The court, therefore, did not consider these restrictions, including the major restrictions limiting use of the property to wastewater treatment and as a public golf course, for the purpose of determining whether Diversified had a usufruct.

But, the fact that some of the obligations found in the lease are duplicative of obligations found in other agreements does not alter the fact that Diversified's lease contains the restrictions identified in this opinion. Indeed, given that the lease requires Diversified to perform all of its obligations under the bond resolution, default under the bond resolution constitutes a default under the lease, and both the bondholders and the city were named third-party beneficiaries to the lease, at a minimum, the bondholder agreement adds to the restrictions placed on Diversified by way of the lease. See *Clayton County Bd. of Tax Assessors*, 164 Ga. App. at 865-866.

The board also asserts that Diversified has taken actions that show that it thought that it took an estate for years. The board points to evidence that Diversified subleased a portion of the property without consent of the authority and that Diversified included the value of improvements to the property as an asset in its financial statements. That Diversified was authorized to sublease the property with the consent of the bondholders is clear in the lease. If Diversified failed to obtain that consent, then Diversified may have breached the

lease. But that event is inadmissible parol evidence regarding the meaning of the lease. See *Wages v. Mount Harmony Mem. Gardens*, 189 Ga. App. 99, 100 (1) (375 SE2d 57) (1988) (evidence of tenant's "understanding" of payment terms of lease was contradictory to written instrument and hence inadmissible). Diversified's financial statements list "buildings" and "land improvements" as assets. But the lease clearly requires Diversified to place title in the authority to any real or tangible personal property it acquired in connection with the project. Diversified's actions are inadmissible to alter the clear meaning of the lease. Id.

The board also notes that many of the lease restrictions relate to the bonds, and once the bonds are paid, these restrictions disappear. But that fact does not alter our conclusions in light of the other restrictions on the property.

Finally, the board primarily relies on *Jekyll Dev. Assoc.*, 240 Ga. App. 273, but that case is distinguishable. In *Jekyll*, the parties stated in the lease that the interest of the lessee was an estate for years and that the lease created a "leasehold estate." Id. at 275 (3). Second, the lessee had a right to extend the lease upon expiration of the 55-year term. Id. Third, the lessee had the right to encumber its interest in the property as security for loans. Id. at 276 (5). Fourth, the lease contained a covenant of quiet enjoyment for the lessee's benefit. Id. at 277 (5). Finally, the restrictions placed on the use of the land in the present case are much greater than those in *Jekyll*, where use of the property was not burdened with wastewater disposal. Here, Diversified's use is severely restricted and always subject to use as a wastewater spray field.

Based on our decision, we need not address Diversified's remaining enumerations of error.

*Judgment reversed. Andrews, P. J., and Barnes, J., concur.*

DECIDED MARCH 26, 2004 —
RECONSIDERATION DENIED APRIL 13, 2004 — 

*Burr & Forman, John A. Howard, Gregory F. Harley, James H. Ludlam, Robert E. Ridgway, Jr.*, for appellant.

*Hulsey, Oliver & Mahar, Julius M. Hulsey, Jane A. Range, Walter J. Gordon*, for appellee.