**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 7, 2020**

# In the Court of Appeals of Georgia

A20A0867. CHATHAM COUNTY BOARD OF ASSESSORS v. JAY LALAJI, INC., AIRPORT HOTELS.

COOMER, Judge.

The Chatham County Board of Assessors (the "BOA") appeals from the trial court's grant of summary judgment in favor of Jay Lalaji, Inc., Airport Hotels ("Jay Lalaji"). At issue is whether a lease agreement (the "Agreement") between the Savannah Airport Commission (the "Commission") and Jay Lalaji created a non taxable usufruct or a taxable estate for years. The trial court determined that the Agreement conveyed a non taxable usufruct, and the BOA challenges this conclusion, arguing that the Agreement amounted to a taxable estate for years. For the following reasons, we affirm.

"A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." *Griffiths v. Rowe Properties*, 271 Ga. App. 344, 344 (1) (609 SE2d 690) (2005).

On August 23, 2006, Jay Lalaji entered a 50 year lease agreement with the Commission which allowed for the construction and operation of a hotel on land owned by the Commission. The BOA assigned the property an identification number and attempted to assess ad valorem taxes against Jay Lalaji under the theory that the interest created by the Agreement with the Commission was a taxable estate for years. Pursuant to OCGA § 48-5-311 (g), Jay Lalaji filed an appeal of the value assessed by the BOA to Chatham County Superior Court.

Jay Lalaji filed a motion for summary judgment arguing that its interest in the property was limited to a nontaxable usufruct. The BOA responded and filed a cross motion for summary judgment claiming that Jay Lalaji's interest was a taxable estate for years. After a hearing, the trial court granted summary judgment to Jay Lalaji. This appeal followed.

The BOA argues that the trial court erred by granting Jay Lalaji's motion for summary judgment, and by denying its cross motion for summary judgment.

2

Specifically, the BOA argues that the trial court erred in determining that Jay Lalaji's interest in the land was a usufruct. We disagree.

Under Georgia law, a usufruct is a lesser interest in real estate than an estate for years. See *Richmond County Bd. of Tax Assessors v. Richmond Bonded Warehouse Corp.*, 173 Ga. App. 278, 279 (325 SE2d 891) (1985).

> A usufruct is created when the owner of real estate grants to another person the right simply to possess and enjoy the use of such real estate either for a fixed time or at the will of the grantor. In such a case, no estate passes out of the landlord and the usufruct may not be conveyed except by the landlord's consent, nor is it subject to levy and sale. A usufruct has been referred to as merely a license in real property, which is defined as authority to do a particular act or series of acts on land of another without possessing any estate or interest therein. By way of contrast, an estate for years, which does not involve the landlord-tenant relationship, carries with it the right to use the property in as absolute a manner as may be done with a greater estate and is subject to ad valorem taxation.

*Love v. Fulton County Bd. of Tax Assessors*, 348 Ga. App. 309, 311, n. 3 (821 SE2d 575) (2018) (citation omitted). A mere usufruct is not subject to ad valorem taxation. *Eastern Air Lines, Inc. v. Joint City-County. Bd. of Tax Assessors*, 253 Ga. 18, 19 (5) (315 SE2d 890) (1984).

3

Where "the term of a lease is for a period greater than five years, a rebuttable presumption arises that the parties intended to create an estate for years rather than a usufruct. To resolve whether the presumption has been overcome in this case, we must examine the terms of the lease agreements and determine what interests the parties intended to convey." *Eastern Air Lines*, 253 Ga. at 19 (1) (citations omitted).

> Factors to be considered in determining whether the parties intended to create a usufruct include: (i) the terms used in the instrument of conveyance to describe the grantee's rights; (ii) any provisions in the instrument addressing the parties' understanding as to liability for ad valorem taxes; (iii) the grantor's retention of dominion or control over the leased property; (iv) which party has retained the duties to keep and maintain the premises and appurtenances; and (v) whether the grantee may assign the lease or allow any part of the leased premises to be used by others without the grantor's consent. Although an estate for years may be encumbered or somewhat limited without being reduced to a usufruct, if the lease imposes sufficient conditions and limitations upon the use of the premises to negate the conveyance of an estate for years the interest passed is reduced to a mere usufruct.

*City of College Park v. Paradies-Atlanta, LLC*, 346 Ga. App. 63, 66 (2) (815 SE2d 246) (2018) (citations and punctuation omitted).

Here, the 50 year agreement creates a rebuttable presumption of an estate for years. See *Diversified Golf, LLC v. Hart County Bd. of Tax Assessors*, 267 Ga. App.

4

8, 10 (598 SE2d 791) (2004); *Jekyll Dev. Assocs., L.P. v. Glynn County Bd. of Tax Assessors*, 240 Ga. App. 273, 275 (3) (523 SE2d 370) (1999). That presumption is sufficiently rebutted in the specific terms of the Agreement which when read together make clear that Jay Lalaji may not use the land "in as absolute a manner as may be done with" an estate for years. OCGA § 44-6-103; *City of College Park*, 346 Ga. App. at 67 (2).

A consideration of the five factors identified above must be undertaken to determine whether the parties intended to create a usufruct or an estate for years. First, we look to the terms of the conveyance itself. The terms of the Agreement establish a limited series of rights in Jay Lalaji and an implicit retention of all other rights in the Commission. Within the Agreement, Jay Lalaji's rights are described as "specified rights and privileges". The Agreement also says that "[a]ll other uses of the Premises not expressly authorized by [the] Agreement are prohibited"; and "subject to the terms and provisions hereof, Lessee shall have the right to possess the Leased Premises under the provision of this Agreement." These phrases suggest a usufruct. See *Diversified Golf*, 267 Ga. App. at 11 (lessee's rights described as "possession, use or occupancy" suggested a usufruct.).

5

Concerning the second factor, designation of liability for ad valorem taxes, section 19 of the Agreement states that "[t]he Lessee shall pay all expenses in connection with the use of the Leased Premises . . . including without limitation by reason of enumeration, taxes, including ad valorem taxes, permit fees, license fees, including tap fees and pure water fees, and assessments lawfully levied or assessed upon the Leased Premises[.]" This clause however, is not dispositive of an intent to create an estate for years. See *Clayton County. Bd. of Tax Assessors v. City of Atlanta*, 164 Ga. App. 864, 865 (1) (298 SE2d 544) (1982) (usufruct created despite provision in lease that lessee was liable for any taxes and any assessment levied on the property), superseded by statute on other grounds as recognized in *Clayton County. Bd. of Tax Assessors v. Aldeasa Atlanta Joint Venture*, 304 Ga. 15, 19-20 (2) (b) (815 SE2d 870) (2018). The Agreement clarifies that Jay Lalajai will pay any taxes that are "lawfully levied or assessed upon the Leased Premises," but it does not express an expectation by the parties that the Agreement is therefore an estate for years. Rather, it merely expresses the parties' intention that *if* ad valorem taxes are lawfully assessed upon the Leased Premises, Jay Lalajai is liable for their payment.

As to the third factor, the Agreement demonstrates that the Commission retains significant dominion and control over the property. Specifically, the Agreement only

allows Jay Lalaji to "construct and operate a hotel and restaurant and related facilities upon the Savannah/Hilton Head International Airport."

In addition to restricting the use of the land, the Agreement also contains the following restrictions: Jay Lalajai must maintain the property in accordance with a franchise agreement approved by the Commission; Jay Lalaji is prohibited from maintaining or repairing the leased premises without approval by the Commission; Jay Lalji is required to provide trash disposal and janitorial services; all proposed improvement must be approved in detail by the Commission; and the Commission has the right to enter the properties "at all reasonable times" to perform various inspections, maintenance, and repairs. Further, the Commission retains the right to utility easements and the right to use all utilities on the property it deems necessary to supply utility service to other portions of the airport. Finally, at the end of the lease term, title to all property or improvements erected or constructed by Jay Lalaji vests in the Commission. If Jay Lalaji fails to comply with any of the terms of the Agreement, the Commission has the right to terminate the Agreement "if such failure shall continue for a period of sixty (60) days after written notice from the Commission[.]" These usage restrictions placed upon Jay Lalaji show that it does not hold the property subject only to minor limitations, but instead, only has a license to

7

use the Commission's property for a limited purpose and subject to the Commission's continuing oversight.

Concerning the fourth factor, which party has the duty to keep and maintain the premises, the Commission retains control over the manner in which the property is maintained and any improvements that are made. The Agreement provides that Jay Lalaji shall not undertake any maintenance or repair that involves structural change, alteration, or rebuilding unless first approved by the Commission. Jay Lalaji is also prohibited from undertaking any initial landscaping without prior written approval from the Commission. Upon taking control of the premises "as is," Jay Lalaji was required to spend a minimum of $2,750,000 in improvements which will vest in the Commission at the expiration of the Agreement. Although Jay Lalaji has a duty to maintain the premises, the Commission has significant authority to govern the maintenance, landscaping, and to control how any improvements are made upon the land.

With regard to the fifth and final factor, authority to assign the lease or sublet the premises, the Agreement expressly prohibits Jay Lalaji from subletting the premises, or assigning or transferring any of its rights under the Agreement without the Commission's consent. This language indicates a usufruct. See *Macon-Bibb*

8

*County Bd. of Tax Assessors v. Atlantic Southeast Airlines, Inc.*, 262 Ga. 119, 121 (414 SE2d 635) (1992) (restrictions on lessee's ability "to sublet or assign . . . without permission of the city or Authority, indicate a usufruct.").

Weighing these factors, we conclude that the restrictions imposed upon Jay Lalaji's use of the premises "are so pervasive as to be fundamentally inconsistent with the concept of an estate for years." *Allright Parking of Ga. v. Joint City-County. Bd. of Tax Assessors*, 244 Ga. 378, 386 (3) (260 SE2d 315) (1979). Because Jay Lalaji has only a circumscribed interest and limited use of the premises, the Agreement amounts to a usufruct. We therefore affirm the trial court's judgment.

*Judgment affirmed. Miller, P. J., and Mercier, J., concur*.