**FIRST DIVISION
BARNES, P. J.,
GOBEIL and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**January 31, 2022**

# In the Court of Appeals of Georgia

A21A1479.  GEORGIACARRY.ORG  INC.,  et  al.  v.  THE ATLANTA BOTANICAL GARDEN, INC.

GOBEIL, Judge.

GeorgiaCarry.org, Inc. and Phillip Evans (collectively the "Plaintiffs") appeal from the trial court's grant of summary judgment in favor of the Atlanta Botanical Garden, Inc. (the "Garden"). The Plaintiffs contend that the trial court erred in granting summary judgment  to the Garden and finding it holds an estate for years, and therefore, the property is private property for purposes of OCGA § 16-11-127,

which pertains to "[c]arrying a weapon in unauthorized locations."[1] For the reasons

that follow, we affirm.

> Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. OCGA § 9-11-56 (c). Thus, to prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact so that the party is entitled to judgment as a matter of law. A defendant may do this by either presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims. . . . Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met.

*Cowart v. Widener*, 287 Ga. 622, 623-624 (1) (a) (697 SE2d 779) (2010) (citations

and punctuation omitted).

---

[1] OCGA § 16-11-127 (c) provides that
[a] license holder or person recognized under subsection (e) of Code Section 16-11-126 shall be authorized to carry a weapon as provided in Code Section 16-11-135 and in every location in this state not listed in subsection (b) or prohibited by subsection (e) of this Code section; provided, however, that private property owners or persons in legal control of private property through a lease, rental agreement, licensing agreement, contract, or any other agreement to control access to such private property shall have the right to exclude or eject a person who is in possession of a weapon or long gun on their private property in accordance with paragraph (3) of subsection (b) of Code Section 16-7-21, except as provided in Code Section 16-11-135.

The underlying facts of this case are largely undisputed. As this Court recounted in an earlier appeal:

> The Garden is a private, non-profit corporation that operates a botanical garden complex on property secured through a 50-year lease with the City of Atlanta. Evans holds a Georgia weapons carry license and is a member of GeorgiaCarry, a gun-rights organization. In October 2014, Evans twice visited the Garden, openly carrying a handgun in a holster on his waistband. Although no Garden employee objected to Evans's weapon on his first visit, he was stopped by a Garden employee during his second visit and informed that weapons were prohibited on the Garden premises, except by police officers. A security officer eventually detained Evans, and he was escorted from the Garden by an officer with the Atlanta Police Department.

*GeorgiaCarry.Org v. Atlanta Botanical Garden*, 345 Ga. App. 160, 161 (812 SE2d 527) (2018) (*GeorgiaCarry.Org II*), vacated by *GeorgiaCarry.Org v. Atlanta Botanical Garden*, 353 Ga. App. 402 (837 SE2d 717) (2020). The Plaintiffs subsequently filed a petition, seeking declaratory and injunctive relief on the basis that OCGA § 16-11-127 (c) authorizes Evans — and similarly situated individuals — to carry a weapon at the Garden. Id. The trial court dismissed the petition after concluding that the issues were not appropriate for the relief sought, a ruling that the Supreme Court reversed in part on appeal. See *GeorgiaCarry.Org v. Atlanta Botanical Garden*, 299 Ga. 26 (785 SE2d 874) (2016) (*GeorgiaCarry.Org I*).

3

"On remand, the trial court held that the Garden's property was considered private under well-established Georgia precedent, allowing the Garden to exclude weapons and, consequently, granted summary judgment to the Garden." *GeorgiaCarry.Org II*, 345 Ga. App. at 161. This Court affirmed the trial court's grant of summary judgment in favor of the Garden, *GeorgiaCarry.Org, II*, 345 Ga. App. at 162-164. On certiorari review, our Supreme Court reversed and remanded the case to the trial court. *GeorgiaCarry.Org, Inc. v. Atlanta Botanical Garden, Inc.*, 306 Ga. 829, 842 (4) (834 SE2d 27) (2019) (*GeorgiaCarry.Org III)*. The Supreme Court specifically held that "in order to determine the proper application of OCGA § 16-11-127 (c) to this or any lease of land by a private entity from a governmental entity, the court must determine whether the specific lease in question creates an estate for years or a usufruct." Id. The specific lease between the City and the Garden was not in the record. Id. at 842 (4). We subsequently vacated our opinion in *GeorgiaCarry.Org II* and adopted the opinion of the Supreme Court as our own. *GeorgiaCarry.Org, Inc. v. Atlanta Botanical Garden, Inc.*, 353 Ga. App. 402, 402 (837 SE2d 717) (2020).

On remand, the parties submitted the 50-year lease executed between the Garden and the City in March 1980, and the current version of the lease executed in

4

August 2017. Thereafter, the Plaintiffs filed a motion for summary judgment, arguing that the Garden obtained only a usufruct under the lease. The Garden filed a cross-motion for summary judgment, asserting that the lease gave the Garden an estate for years. The trial court granted summary judgment in favor of the Garden, finding that the Garden holds an estate for years under its lease with the City, and therefore, the property is private for purposes of OCGA § 16-11-27 (c) and the Garden may exclude or eject persons in possession of a gun under that subsection. This appeal followed.

The Plaintiffs contend that the trial court erred in granting summary judgment to the Garden and finding it holds an estate for years, and counter that the lease between the Garden and the City conveys only a usufruct. We disagree and conclude that the lease created an estate for years as explained below.

1. A usufruct occurs where one accepts the grant of "the right simply to possess and enjoy the use of such real estate either for a fixed time or at the will of the grantor." OCGA § 44-7-1 (a). An estate for years occurs where one accepts "the right to use the property in as absolute a manner as may be done with a greater estate, provided that the property or the person who is entitled to the remainder or reversion interest is not injured by such use." OCGA § 44-6-103. "[W]hether an estate in the land passes to the tenant, or he obtains merely the usufruct depends upon the intention

5

of the parties; and this is true without regard to the length of the term." *Diversified*

*Golf, LLC v. Hart County Bd. of Tax Assessors*, 267 Ga. App. 8, 10 (598 SE2d 791)

(2004) (citation and punctuation omitted). However, Georgia courts have held that

a lease "in excess of five years is presumed to be an estate for years." *Jekyll Dev.*

*Assocs. L.P. v. Glynn County Bd. of Tax Assessors*, 240 Ga. App. 273, 274 (1) (523

SE2d 370) (1999) ("All renting or leasing of real estate for a period of time in excess

of five years is presumed to be an estate for years.") (citations omitted); *Eastern Air*

*Lines, Inc. v. Joint City-County Bd. of Tax Assessors*, 253 Ga. 18, 19 (1) (315 SE2d

890) (1984) (with a term of a lease for a period greater than five years, "a rebuttable

presumption arises that the parties intended to create an estate for years rather than

a usufruct").

Section 2.4 of the Garden's lease states that

The Lease Term shall commence on the date of this Agreement and shall
expire at midnight, local time in the City, on the date which is *fifty (50)*
*years* after the date of this Agreement subject to such being sooner
terminated as provided in this Agreement. (Emphasis added).

Thus, the lease period of 50 years presents a rebuttable presumption that the parties

intended to create an estate for years rather than a usufruct. To overcome this

6

presumption, the Plaintiffs would have to show through the terms of the lease that the parties intended to create only a usufruct. See *Jekyll Dev. Assocs. L.P.*, 240 Ga. App. at 274-275 (2). However, the terms of the lease between the City and the Garden show no such intent.

The City and the Garden stated their intention to create an estate for years in Section 12.4 of the lease, which provides:

> It is mutually covenanted, understood and agreed by and between [the City] and [the Garden] that this Agreement and *the leasehold estate created hereby* shall be governed, construed, performed and enforced in accordance with the laws of the State of Georgia. (Emphasis added).

See *Jekyll Dev. Assocs. L.P.*, 240 Ga. App. at 275 (3) (term "leasehold estate" is a factor to be taken into consideration in determining the nature of the conveyance as an estate for years). In addition the lease refers to the Garden's "leasehold interest" in the property. See Section 3.4 ("Lessor covenants and agrees that throughout the Lease Term neither the Demised Premises, nor Lessee's leasehold interest . . . ." This phrase is important because an estate for years grants an "interest" or "estate" to the lessee, while a usufruct grants merely a "license." See *Jekyll Dev. Assocs. L.P.*, 240 Ga. App. at 274 (1) ("A usufruct has been referred to as merely a license in real property, which is defined as authority to do a particular act or series of acts on land

7

of another without possessing any estate or interest therein.") (citation, emphasis, and punctuation omitted).

In addition, the terms of the lease show that parties intended for the Garden to receive more than simple use and possession. Section 3.2 of the lease states that the City holds "fee simple title" in the property and "delivered" that property to the Garden "free and clear." The lease confers to the Garden "exclusive control, possession, and enjoyment" (Section 3.1) and "exclusive control and management" of the property (Section 5.5), including the authority to "exclude any objectionable person or persons from the Garden," to the extent permitted by law (Section 5.7).

Therefore, the language of the lease is consistent with the intention to create an estate for years rather than the intention to grant a usufruct, because the parties used the term "leasehold estate" and granted a 50-year term with "exclusive control" over the property.

2. The Plaintiffs maintain that the lease, while admittingly containing some indicia of an estate for years, is more consistent with a usufruct based on the similarities to a lease analyzed in *Diversified Golf, LLC*. However, the lease between the City and the Garden has little similarity with the lease in that case.

In *Diversified Golf, LLC*., the property at issue was a 445 acre tract purchased by the City of Hartwell to use as a spray field for treated wastewater. 267 Ga. App. at 8. After facing public opposition to the original plan, Hartwell decided to develop a municipal golf course on a portion of the land. Id. at 8-9. Hartwell entered into a series of agreements with Diversified Golf, LLC, whereby Diversified agreed to a 50-year lease agreement that required Diversified to construct and operate a golf course on 60 acres of the land and operate wastewater disposal and storage facilities on the remainder of the property. Id. at 9.

> This Court noted that
>
> [the parties] did not specifically state in the lease whether they intended an estate for years or a usufruct. At one point, Diversified's rights are described as "possession, use or occupancy" of the golf course. This phrase suggests a usufruct.

Id. at 11.

In concluding that the lease was a usufruct, we found that the "most important restriction" was that the lease required Diversified to "accept all treated municipal wastewater sent to it and spray it on the property." Id. at 12. We stated that "the lease regulates how Diversified can operate the golf course, and it makes clear that wastewater treatment overrides any other use of the property, even the golf course."

9

Id. Because of this burdensome requirement, we found that "Diversified's use is severely restricted and always subject to use as a wastewater spray field." Id. at 16. Accordingly, this Court found the lease was a usufruct. Id. at 14.

Unlike the lease in *Diversified Golf, LLC*., Section 12.4 of the lease at issue here specifically states that it transfers a "leasehold estate" from the City to the Garden. In addition, the lease between the City and the Garden grants "enjoyment" (Section 3.1) and "exclusive control and management" (Section 5.5) of the property to the Garden.

Most significantly, this lease does not contain an extremely burdensome restriction such as the overriding use as a wastewater spray field on the golf course property in *Diversified Golf, LLC*. Nevertheless, the Plaintiffs point to the following restrictions to support their claim of a usufruct : the Garden is obligated to use the property as a botanical garden, and only in accordance with the "Master Plan" approved by the City (Sections 5.1 and 5.2) ;[2] the Garden is prohibited from assigning its rights under the lease (Sections 1.12 and 8.4) ; the City retains the right to

_____

[2] While the Garden's lease required the botanical garden to be developed under a Master Plan that was approved by the City, the most recent version of that Master Plan from 2002 was "entirely developed and designed by the Garden with no input or revisions from the City of Atlanta."

10

disapprove of future developments (Section 5.2) ; the Garden must make its books available to the City for inspection (Section 10.2 (d)) ; the Garden must carry insurance and name the City as an additional insured (Sections 9.1 and 9.2) ; the Garden must maintain the property in a clean condition for the benefit of the City and the people of Atlanta (Sections 5.4 and 6.1) ; the Garden must maintain the plants, do lawn care and pest control, and maintain the roads and parking lots(Sections 7.1 (a)-(d)) ; the Garden must maintain and share a "first class green parking facility" (Sections 8.1 and 8.2.2) ; the Garden must get the City's approval for changes to parking fees (Section 8.6) ; and the Garden is required to file compliance reports with the City showing non-discrimination practices (Section 10.2 (e)).[3] . However, none of these restrictions so severely restricts the Garden's use and enjoyment of the property as a botanical garden to overcome the presumption that the lease is one for an estate for years. Importantly, "a [lease] which ordinarily would be construed to create an estate for years, is not reduced to a mere usufruct because certain limitations

[3] The Plaintiffs also point to the 1985 version of the lease that contained a provision requiring the City's approval of initial admission fees and a suggested fee structure. However, the record shows that the Garden maintains "absolute control over admission prices."

are put upon its use." *Warehouses, Inc. v. Wetherbee*, 203 Ga. 483, 490-491 (46 SE2d 894) (1948).

The lease at issue here is more like the lease that this Court held to be a estate for years in *Jekyll*. In *Diversified Golf, LLC*., this Court summarized the factors used in *Jekyll* to show an estate for years:

> In *Jekyll*, the parties stated in the lease that the interest of the lessee was an estate for years and that the lease created a "leasehold estate." Second, the lessee had a right to extend the lease upon expiration of the 55-year term. Third, the *Diversified Golf, LLC*., lessee had the right to encumber its interest in the property as security for loans. Fourth, the lease contained a covenant of quiet enjoyment for the lessee's benefit. Finally, the restrictions placed on the use of the land in [*Diversified*] are much greater than those in *Jekyll*, where use of the property was not burdened with wastewater disposal. Here, Diversified's use is severely restricted and always subject to use as a wastewater spray field.

*Diversified Golf, LLC*, 267 Ga. App. at 16 (citations omitted). Like the lease in *Jekyll*, Section 12.4 of the lease between the City and the Garden granted a "leasehold estate" to the Garden. In addition, like the lessee in *Jekyll*, the Garden is granted exclusive "enjoyment" pursuant to Section 3.1 of the lease. And, most importantly, the Garden, like the lessee in *Jekyll*, is not burdened by any restriction as severe as the burden of wastewater disposal on a golf course in maintaining the botanical garden.

12

Further, while the Court in *Jekyll* found that the lease also contained restrictions that were more consistent with a usufruct, it nonetheless found the lease granted the lessee an estate for years. *Jekyll*, 240 Ga. App. at 276-277 (5). Those restrictions were similar to the restrictions to the lease between the City and the Garden (including limits on how the property can operate, maintenance activities, and restrictions on assignment rights). Notably, these restrictions protect the City's reversionary interest. As stated in *Jekyll*:

> Here, most sections of the lease either grant rights to or impose obligations upon the lessee consistent with the conveyance of an estate for years or set forth restrictions designed to preserve the hotel as a historic structure and protect the lessor's reversionary interest.

Id. at 277 (7). The same is true with the lease at issue here.

3. The Plaintiffs argue that the fact that the Garden does not pay ad valorem taxes on the property shows that the lease conveyed a usufruct. Section 3.4 of the lease states:

> Lessor covenants and agrees that throughout the Lease Term neither the Demised Premises, nor Lessee's leasehold interest therein pursuant to this Agreement, shall be subject to ad valorem taxes or assessments or any other Imposition imposed by the City.

Generally, the leasehold interest created by an estate for years is taxable but the license in property created by a usufruct is not. See *Camp v. Delta Air Lines, Inc.*, 232

13

Ga. 37, 39 (205 SE2d 194) (1974). Accordingly, if the City intended to create a non-taxable usufruct, the provision eliminating the tax burden would have been unnecessary. "It is a cardinal rule of contract construction that a court should, if possible, construe a contract so as not to render any of its provisions meaningless and in a manner that gives effect to all of the contractual terms." *Milliken & Co. v. Ga. Power Co.* , 354 Ga. App. 98, 100 (839 SE2d 306) (2020) (citation and punctuation omitted).

The Plaintiffs argue that because of the exemption from ad valorem taxes the lease is either a non-taxable usufruct or that the Garden's exemption is void.[4] Under Georgia law, entities in possession of an estate for years can receive exemptions from the obligation to pay ad valorem taxes on their leasehold estate. See OCGA § 48-5-41; City of Atlanta's Code of Ordinances Section 146-37. Thus, the Garden's

---

[4] The Plaintiffs also maintain the City and the Garden entered into an unconstitutional agreement to exempt the Garden from paying ad valorem taxes, and this Court is obligated to "adopt the interpretation that does not result in an unconstitutional provision." However, there are lawful statutory exemptions from paying ad valorem taxes. See OCGA § 48-5-41. And the Plaintiffs have failed to support their argument that the exemption received by the Garden must be unconstitutional. Thus, there is no factual basis to find that the Garden's exemption is unconstitutional. Regardless question of whether the exemption for ad valorem taxes is unconstitutional is irrelevant to the analysis of whether the lease itself conveys an estate for years.

exemption is not necessarily void. Furthermore, the Plaintiffs' assertion that the City did not follow the proper procedure[5] in exempting the Garden from ad valorem taxes has no bearing on whether the City and the Garden intended to create an estate for years or a usufruct through the lease.

For the reasons stated above, the trial court did not err in granting summary judgment to the Garden and finding it holds an estate for years and therefore the property is private property for purposes of OCGA § 16-11-127 (c), allowing the Garden to exclude weapons.

*Judgment affirmed. Barnes, P. J., and Markle, J., concur.*

---

[5] The Plaintiffs presumably references Article VII, Section II, Paragraph II (a) (1) to assert the City was required to get approval by two-thirds of the members of each house of the General Assembly and by a majority of voters statewide. Article VII, Section II, Paragraph II (a) (1) permits the General Assembly to provide for a broad range of exemptions of property from ad valorem taxation if the "exemption is approved by two-thirds of the members elected to each branch of the General Assembly and by a majority of the qualified electors of the state voting in a referendum thereon."

15