A94A2525. ACKERMAN & COMPANY v. LOSTOCCO.
(454 SE2d 792)

ANDREWS, Judge.

Ackerman & Company appeals the state court's grant of summary judgment to Alexander Lostocco as to its complaint and in favor of Lostocco's counterclaim for attorney fees and expenses of litigation.

The case arose out of the following facts. On May 27, 1988, Ackerman filed suit against Airport Parking Ventures, Allen Aycock, Ron Cates and Alexander Lostocco. Ackerman alleged that the defendants operated under the name of Tripoint Holdings and later under the name Airport Parking. Ackerman alleged that Tripoint Holdings signed an exclusive leasing agreement with it, agreeing that Ackerman had the right to be the exclusive leasing agent to the Atlanta CarPort for defendants. Ackerman alleged that, despite this agreement, defendants had failed to pay for its services in procuring tenants and were indebted to it for those commissions. Ackerman alleged that Lostocco was a general partner of Airport Parking and was a joint obligor to it. Count 1 of the complaint was for breach of the agreement in the amount of $23,297.60 and fees for stubborn litigiousness; Count 2 was for interest on the liquidated damages; and Count 3 sought damages for unjust enrichment.

The defendants filed an answer, stating that neither Cates nor Lostocco had ever been a partner in Airport Parking Venture I ("APVI"), or in Tripoint Holdings, or in any predecessor or successor to either company. Cates and Lostocco filed a counterclaim, in which they stated that neither Cates nor Lostocco had ever contracted with Ackerman for commissions, nor had Cates or Lostocco been unjustly enriched. The counterclaim stated that Ackerman's suit against Lostocco and Cates was frivolous.

On January 11, 1993, Lostocco filed a motion for summary judgment in which he argued that he was not a real party in interest to the litigation. He stated that he had never been a partner, representative agent, or in any way associated with Tripoint Holdings. Lostocco stated that he was not a general partner of APVI, and that he had never negotiated, contracted or dealt with Ackerman, either individu-

ally or in a representative capacity. Contemporaneously with his motion, Lostocco filed his affidavit which set forth the facts argued in his motion.

Attached to Lostocco's affidavit was the partnership agreement for APVI, in which the general partners were listed. Lostocco was not listed as a general partner. Nonetheless, Jinna Management, Inc. was listed as a general partner, and Lostocco signed the agreement as president of that company. With the motion, Lostocco also filed correspondence which established that he had requested Ackerman to voluntarily dismiss the complaint against him.

Ackerman did not file its response to the motion for summary judgment until July 15, 1993. In its response, Ackerman pointed out that the partnership agreement designated Jinna Management as a managing partner of the partnership. Moreover, the agreement designated Lostocco as Jinna's representative and provided that Jinna Management was the manager of the parking facility. Ackerman attached to its response the affidavit of McKnight, its attorney, which stated that he received a letter from a Tripoint agent stating that "effective July 24, 1987, Mr. Alexander Lastocco [sic], Managing Partner of the CarPort, will assume all responsibility for accounting, leasing, property management, tenant improvements and marketing for The CarPort. Should you have questions relating to any of these issues, please contact Mr. Lastocco [sic] directly."

With Ackerman's response, there was also evidence that on December 30, 1987, a cover letter had been sent to it enclosing a check in the amount of $23,297.60 on Airport Parking's account. Lostocco was copied on that letter, however, payment on the check was stopped. On January 31, 1988, Lostocco issued a "cash call" to partners to pay for certain outstanding bills. Based on these facts, Ackerman argued that questions of fact remained in the case.

Lostocco filed a reply brief and motion to strike in which he argued that Ackerman's response to his motion was untimely and should be disregarded. Citing Uniform State Court Rule 6.2, Lostocco claimed that Ackerman waived its right to oppose the motion by failing to timely file its response. Moreover, Lostocco argued that there was no basis for imposing liability against him. Lostocco's attorney also filed an affidavit in which he recounted his communications with Ackerman.

On April 16, 1994, Ackerman filed an amendment to its complaint. In it, Ackerman alleged that Lostocco was in charge of the Airport Parking finances and that he refused to pay money due Ackerman. Ackerman claimed that Lostocco's failure to pay was an unlawful conversion, for which Ackerman was entitled to recover. Attached to the amendment was Aycock's affidavit in which he avowed that Lostocco had used the money intended for CarPort for other

purposes.

On April 20, 1994, after a hearing, the state court issued the order granting Lostocco's motion for summary judgment. The order stated that fees were granted in the amount of $1,597.50, but that this sum "may be increased upon proper showing through affidavit testimony submitted to this court within five days of the date of this judgment." After the order issued, various evidence regarding attorney fees was submitted.

1. In its first enumeration of error, Ackerman claims the state court erred in granting summary judgment to Lostocco on Counts 1 through 3 of the complaint. Ackerman contends that under the Georgia Uniform Partnership Act (OCGA § 14-8-1 et seq.), Lostocco's "cash call" was an admission of the debt to it. Furthermore, Ackerman argues that under OCGA § 14-8-6, Lostocco is individually liable to it since he represented himself as a partner of APVI.

We first consider Lostocco's argument that under Uniform State Court Rule 6.2 the court properly granted his motion since Ackerman's response was filed five months late. Rule 6.2 provides: "[u]nless otherwise ordered by the judge, each party opposing a motion shall serve and file a response, reply memorandum, affidavits, or other responsive material not later than 30 days after service of the motion, or on the date of the hearing (if one is held) whichever occurs sooner." Here, Lostocco filed his motion on January 11, 1993 and Ackerman's response was not filed until July 15, 1993. Nevertheless, "[t]here is no such thing as a default summary judgment. By failing to respond to a motion for summary judgment, a party merely waives his right to present evidence in opposition to the motion. It does not automatically follow that the motion should be granted. A motion for summary judgment should not be granted unless it affirmatively appears from the pleadings and the evidence that the party so moving is entitled to prevail." (Citations and punctuation omitted.) *Wilson v. Valentine*, 199 Ga. App. 244 (1) (404 SE2d 600) (1991).

Accordingly, assuming that the state court disregarded materials filed after the 30-day period expired, we must determine whether there was sufficient evidence to defeat Lostocco's motion *prior* to the filing of Ackerman's response. Clearly there was not sufficient evidence to withstand the motion for summary judgment. Although the partnership agreement indicates that Lostocco was the president of Jinna Management, there "was no evidence of fraud or abuse of the corporate form which would authorize piercing the corporate veil in this case." *Caton v. Haynes*, 260 Ga. 204 (391 SE2d 107) (1990); *Amason v. Whitehead*, 186 Ga. App. 320 (367 SE2d 107) (1988). Lostocco was not a partner of Tripoint or of APVI, and there appears to be no basis for imposing liability on him. Accordingly, the grant of summary judgment was proper. We note that the state court's conclu-

sion would be warranted even in light of the materials Ackerman filed prior to the hearing.

2. In its second enumeration, Ackerman contends that the court erred in granting summary judgment to Lostocco on the conversion count of the complaint, which count was added by amendment on April 18, 1994. Citing *DCA Architects v. American Bldg. Consultants*, 203 Ga. App. 598 (2) (417 SE2d 386) (1992), Ackerman argues that because the conversion count was added to the complaint two days before the hearing, summary judgment should not have been granted. Moreover, it contends that Lostocco was personally liable for committing this tort. Ackerman bases this argument on the check from Airport Parking for $23,297.60 and the "cash call" letter by Lostocco. Ackerman also points to Aycock's affidavit in which he states that although the money was paid in, Lostocco did not use it to pay Ackerman.

Again, we find no error in the court's ruling. "Conversion consists of an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation." *DCA Architects*, supra at 600. Here, we find no evidence that Lostocco was liable for conversion. There is no evidence before us that Lostocco's dominion over the property was inconsistent with his rights thereto as president of Jinna. Although Ackerman argues that Aycock's statements regarding Lostocco's allocation of money for "other purposes" suggest wrongdoing, we find no such evidence in the record. See generally *Faircloth v. A. L. Williams & Assoc.*, 206 Ga. App. 764 (426 SE2d 601) (1992).

We also find meritless Ackerman's argument that summary judgment on the conversion claim was improper because it was not allowed a 30-day period within which to respond. Here, Lostocco argues that Ackerman consented at the hearing to arguing the merits of Count 4 of its complaint. There is no transcript of the hearing before us. In the absence of a transcript, we must assume that the trial court found Ackerman to have waived the 30-day period, and we must assume that the trial court acted correctly. *Rasmussen v. Nodvin*, 174 Ga. App. 203, 204 (1) (329 SE2d 541) (1985); compare *Howell Mill/ Collier Assoc. v. Pennypacker's, Inc.*, 194 Ga. App. 169 (1) (390 SE2d 257) (1990).

3. In its third enumeration, Ackerman claims that the state court erred in granting summary judgment on Lostocco's counterclaim for attorney fees and expenses of litigation. In its final enumeration, Ackerman argues that it was error for the state court to award attorney fees against it in the absence of any evidence regarding such fees.

Ackerman argues that the fact that it suggested a mutual dismis-

sal of claims on March 13, 1989, ten months after filing the lawsuit, indicates that the trial court erred in granting summary judgment to Lostocco on his abusive litigation claim. Although Ackerman appears to concede that OCGA § 51-7-82 is not applicable to this suit, see *Woodall v. Hayt, Hayt & Landau*, 198 Ga. App. 624 (402 SE2d 359) (1991), citing that statute, it argues that an offer to dismiss ten months after the lawsuit was filed mandated that Lostocco's counterclaim be dismissed. We disagree.

"Because there was no basis for the action against [Lostocco], and because the appellant could have made this determination with a minimum amount of diligence, we affirm the award of attorney fees. [Cit.]" *Stancil v. Gwinnett County*, 259 Ga. 507, 509 (1) (384 SE2d 666) (1989).

Ackerman argues that the evidence regarding the fees was insufficient. It claims that there was no proof that Lostocco incurred fees or paid fees, and that there was no proof of the value of the services rendered. There are several affidavits included in the record which supply the information which Ackerman contends is missing and these arguments are without merit.

*Judgment affirmed. Beasley, C. J., and Johnson, J., concur.*

DECIDED FEBRUARY 7, 1995.

*Robert H. McKnight, Jr.*, for appellant.
*Raiford, Dixon & Thackston, Sheldon K. Fram*, for appellee.