A07A2396. WILCOX HOLDINGS, LTD. v. HULL et al.
(659 SE2d 406)

ANDREWS, Presiding Judge.
Wilcox Holdings, Ltd. (Wilcox) appeals from the trial court's grant of James M. Hull III, Windsor Square, LLC, and Hull Storey Retail Group, LLC's (collectively "Hull") motion for summary judgment on Wilcox's complaint for equitable relief and damages. Wilcox petitioned for an injunction to prevent Hull from blocking two driveways across Hull's property and also claimed damages for tortious interference with contract. For the reasons discussed below, we affirm.

The undisputed evidence in the record shows that Hull owns a tract of land in Windsor Square Shopping Center, Tract C, and Wilcox owns an adjacent tract of land in the shopping center, Tract B. The

entrance to the shopping center from Peach Orchard Road lies entirely within Hull's property, Tract C.[1] At the time of this lawsuit, there were two openings from Tract B across Tract C to the entranceway. These driveways were put in by Wilcox in 1981, to give customers of the business located on Tract B a means to enter and exit the shopping center from Peach Orchard Road.

These two adjoining properties are subject to a Declaration that provides for

> a permanent mutual reciprocal and non-exclusive easement, license, right and privilege of passage and use, both pedestrian and vehicular, for the purpose of ingress and egress over all roads and driveways and parking upon all parking areas located from time to time upon [both Tract B and Tract C].

The Declaration also provides that "the owners of Tracts 'A', 'B', 'C' and 'D', respectively, shall have the right to relocate buildings, walkways and parking areas in any manner whatsoever[,] and the easement, license, right and privilege granted by this instrument shall then apply to the areas so established."

In December 2005, Hull sent a letter to Eugene Wilcox, stating his intention of putting a curb across both openings in order to put in more parking spaces on Tract C. Wilcox then filed the instant case, petitioning the court for an injunction to prevent Hull from blocking Wilcox's access to the entranceway. Wilcox also claimed damages for tortious interference with contract because a potential buyer for Tract B refused to go through with the sale after learning that the two means of ingress and egress were going to be blocked. Hull counterclaimed, requesting a declaratory judgment giving him the right to relocate the driveways and requesting an injunction requiring Wilcox to remove any fixtures encroaching on Hull's property and enjoining Wilcox from any further encroachment.

Both parties moved for summary judgment. In granting Hull's motion for summary judgment, the trial court concluded that the Declaration under which both owners purchased the property controlled the issue. The trial court rejected Wilcox's contention that his property would be effectively "landlocked," holding that there were alternative ways of ingress and egress for Tract B across Tract C. The trial court also held that there was no evidence that driveways on Tract C had been dedicated to public use, and no evidence to support

---

[1] Wilcox contends that this placement of the entranceway was done in error because the site plan plat shows the entranceway as lying between Tract B and Tract C.

Wilcox's claim that Hull had tortiously interfered with his contract to sell Tract B. This appeal followed.

1. In his first enumeration of error, Wilcox claims that the trial court erred in relying on *SunTrust Bank v. Fletcher*, 248 Ga. App. 729 (548 SE2d 630) (2001), because it does not support the trial court's holding. Alternatively, Wilcox argues that if it is determined that the case does support the holding, *SunTrust* should be overruled.[2]

> Georgia follows the majority rule that an easement with a fixed location cannot be substantially changed or relocated without the express or implied consent of the owners of both the servient estate and the dominant estate, *absent reservations contained in the instrument creating the easement.*

(Emphasis supplied.) *Sloan v. Rhodes*, 274 Ga. 879, 879-880 (560 SE2d 653) (2002); *Herren v. Pettengill*, 273 Ga. 122, 123 (538 SE2d 735) (2000).

Here, there are reservations contained in the instrument creating the easement. The Declaration in this case is almost identical to the document creating the easements in *SunTrust*, supra. In that case, the developer conveyed to SunTrust's predecessor in title, also a bank,

> a parcel, known as Tract A, . . . together with the following easement: "a non-exclusive easement license, right and privilege of passage for pedestrians and vehicular ingress and egress over and across all portions of the common areas of the adjacent shopping center owned by Grantor. . . ." In the same deed, the developer retained certain rights with the following words: "The *adjacent property owner* shall have the *right to relocate* buildings, walkways and *parking areas* in any manner whatsoever and the easement . . . shall then apply to the area so established."

Id. at 730. In *SunTrust*, the adjacent property owner put in parking spaces which blocked the bank's drive-through lane that emptied onto that property. SunTrust sued, claiming that the adjacent property owner was blocking its use of the property. This Court held that

---

[2] Wilcox does not support this contention with any argument or citation to authority and it is therefore waived.

the property owner could rearrange buildings, parking and walkways, thus forcing the Bank to rearrange its point of egress onto the adjacent property, as long as the easement was maintained. Id. at 731-733.

Likewise, in the instant case, Hull may rearrange his building and parking spaces as long as the easement is maintained. Although Wilcox claims that the business on his property will be "landlocked" if the two driveways across Tract C are closed, he later states that the effect of the closure will be that he will lose parking spaces and a drive-through window and will not have the same "usefulness and utility of the easement" as before. But, under the holding in *SunTrust* and the controlling Declaration, although Wilcox is entitled to *an* easement across Tract C so that his customers may access the entranceway, he may not dictate where the adjacent property owner may place his building, walkways or parking spaces.

2. Next Wilcox claims that there is an express easement over that portion of Tract C because the developer expressly dedicated it. In support of this claim, Wilcox points to a site plan plat that shows the entranceway as directly adjoining both Tract B and Tract C. We note that Wilcox phrased this argument differently below. There, Wilcox argued that the plat shows that "the original developer is by law presumed to have irrevocably dedicated such streets for the use of all the tract owners in the shopping center." We do not disagree with this statement and, as previously stated above, Hull must maintain an easement over his property to this entranceway.

3. Wilcox also claims that there was an implied dedication of the easement over Tract C that was accepted by the public. He cites to OCGA § 44-5-230, which provides:

> After an owner dedicates land to public use either expressly or by his actions and the land is used by the public for such a length of time that accommodation of the public or private rights may be materially affected by interruption of the right to use such land, the owner may not afterwards appropriate the land to private purposes.

Thus, a public dedication requires an offer, either express or implied, by the grantor, and an acceptance, either express or implied, by the public. *MDC Blackshear, LLC v. Littell*, 273 Ga. 169, 170 (537 SE2d 356) (2000). Wilcox argues that there was an implied dedication of the land for public use because Hull acquiesced in the public's use of the driveways over a long period of time.

First, we note that "[w]hen, as in this matter, an implied dedication is claimed, the facts relied upon must be such as to clearly indicate a purpose on the part of the owner to abandon his personal

dominion over the property and to devote it to a definite public use." (Punctuation omitted.) *MDC Blackshear*, supra at 170. The evidence in the record before us does not support this argument.

Next, Wilcox cites to *Postnieks v. Chick-fil-A*, 285 Ga. App. 724 (647 SE2d 281) (2007), as authority for this claim of error. But, in *Postnieks*, this Court found that there had been an *express* dedication of the land to public use. Id. at 729. That is not the case here.

Finally, the Declaration under which both Hull and Wilcox purchased their tracts provides that

> the easements . . . granted hereby shall be for the benefit of and restricted solely to the owners and their assigns of Tracts "A", "B", "C" and "D", but any owner may grant the privilege or benefit of such easement . . . to its tenants, subtenants, agents, guests, invitees and licensees; provided, however, that the within Declaration shall in no event be construed to create any rights in or for the benefit of the general public. . . .

The easements established by Wilcox were undertaken pursuant to rights given him by the Declaration. The Declaration specifically provides that any easements created under the Declaration cannot be construed as creating any rights by the general public. Accordingly, for all of the above reasons and because Wilcox has cited us to no authority to the contrary, we conclude there is no merit to this enumeration of error.

4. Wilcox also claims that the trial court erred in dismissing his claim for tortious interference with contractual relations. The claim arose out of a contract to sell Tract B. Wilcox testified at his deposition that when he informed the buyer of Hull's plans to close the driveways over Tract C, the buyer declined to go through with the purchase of the property.

To establish a cause of action for tortious interference with

> contractual relations, a plaintiff must show that the defendant (1) acted improperly and without privilege, (2) purposely and with malice with the intent to injure, (3) induced a third party or parties not to continue a business relationship with the plaintiff, and (4) for which the plaintiff suffered some financial injury.

*Kitfield v. Henderson, Black & Greene*, 231 Ga. App. 130, 133 (498 SE2d 537) (1998).

Wilcox has submitted no evidence to support this cause of action and has cited to no authority on point in support of this enumeration

of error. For instance, it is undisputed that neither Hull nor any of his employees had any communications with the potential buyer of Tract B. Also, in light of our holding in Division 1, there is no evidence before us that Hull acted improperly or without privilege. There was no error in the trial court's grant of Hull's motion for summary judgment on this claim.

*Judgment affirmed. Ellington and Adams, JJ., concur.*

DECIDED MARCH 7, 2008 — 

*Jay M. Sawilowsky*, for appellant.

*Tucker, Everitt, Long, Brewton & Lanier, John B. Long, A. Montague Miller, Jon E. Ingram, Jr.*, for appellees.