**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**November 30, 2012**

# In the Court of Appeals of Georgia

A12A0809. PINNACLE PROPERTIES V, LLC et al. v. MAINLINE
      SUPPLY OF ATLANTA, LLC.

RAY, Judge.

Pinnacle Properties V, LLC ("Pinnacle") appeals from the trial court's order which, inter alia, granted summary judgment to a materialman, Mainline Supply of Atlanta, LLC, d/b/a Mainline Supply Company ("Mainline"), thereby establishing a special lien against Pinnacle's interest in an office building. Pinnacle asserts that the trial court erred as a matter of law in granting a special lien: 1) on an interest granted through a usufruct; 2) on Pinnacle's contractual options to buy real property and sell improvements upon it; and 3) on Pinnacle's rights as a grantee under a deed to secure debt. For the reasons that follow, we affirm.

Summary judgment is appropriate if the pleadings and evidence show no genuine issue as to any material fact, and the moving party is entitled

to judgment as a matter of law. On appeal from the grant or denial of summary judgment, an appellate court conducts a de novo review, construing all reasonable inferences in the light most favorable to the nonmoving party.[1]

"When a question of law is at issue, we owe no deference to the trial court's ruling and apply the 'plain legal error' standard of review."[2]

Mainline brought this suit for $113,731.22, seeking to foreclose a materialman's lien on a building which Pinnacle built on land leased from the Kennesaw Development Authority ("KDA"). The claim arose when a general contractor hired by Pinnacle, to whom Mainline had supplied piping, valves and fitting materials, failed to pay Mainline's invoices. Mainline filed claims of lien against both KDA and Pinnacle. Only the claim of lien against Pinnacle is at issue here.

---

[1] (Footnotes omitted.) *Dan J. Sheehan Co. v. The Fairlawn on Jones Homeowners' Assn., Inc.*, 312 Ga. App. 787, 788 (720 SE2d 259) (2011); OCGA § 9-11-56 (c).

[2] (Punctuation and footnote omitted.) *Fundus America (Atlanta) Ltd. Partnership v. RHOC Consolidation*, LLC, 313 Ga. App. 118, 118 (720 SE2d 176) (2011).

The question before us is whether Pinnacle's interest in the building is subject to lien. The interest at issue was created when Pinnacle and KDA, on December 1, 2007, executed four agreements regarding the building: the Rental Agreement; the Purchase, Sale, Financing and Option Agreement ("Option Agreement"), and two other agreements related to Pinnacle's management and use of the site and building.

Under those agreements, Pinnacle agreed to sell to KDA 34 acres of real property for an initial payment in excess of $11.6 million.[3] Then KDA agreed to rent those 34 acres back to Pinnacle for $10 so that Pinnacle could construct mixed-use office and retail buildings. The agreements also provided an option contract whereby KDA could buy the improvements from Pinnacle as they were completed, or Pinnacle could purchase both the land and the improvements from KDA. Although the agreements contemplate the construction of an entire development, it appears that only the building subject to this litigation ever was built. The agreements further provide that Pinnacle's ownership of the improvements terminates when the Rental Agreement terminates, regardless of whether either party exercises its purchase option. The Rental Agreement terminates, at the latest, on November 30, 2012.

_____

[3] The contracts do not provide an overall purchase price, merely contemplating that it will be "an amount equal to the cost to [Pinnacle] and its affiliates of the [land] and land improvements" as of the closing date on the land sale.

After executing these contracts, Pinnacle hired a general contractor, McGuire Properties, Inc., which in turn hired Mainline to provide piping, valves, and fittings for the building. The general contractor failed to pay Mainline, and Mainline filed claims of lien and a complaint against, inter alia, KDA and Pinnacle.

On September 7, 2010, the trial court granted summary judgment to KDA on Mainline's claim of lien. The trial court found that according to the rental agreement, ownership of the land was severed from ownership in the building. The court determined that KDA had no ownership interest in the building, but held a fee simple interest in the land, and that Pinnacle held a usufruct in the land, but had "title" to the improvements, i.e., the building, which could be encumbered. Pinnacle never moved for reconsideration or otherwise appealed this order. Nor did Pinnacle challenge the form of the lien or Mainline's satisfaction of the requirements of OCGA § 44-14-361.1 below.

Mainline then moved for summary judgment against Pinnacle. On September 1, 2011, the trial court granted Mainline's motion, thereby creating an enforceable materialman's lien pursuant to OCGA § 44-14-361.1 (a).[4] The order declared a

[4] Mainline recorded its claim of lien on January 7, 2009. Because Georgia has twice amended OCGA § 44-14-361.1, with those amendments taking effect March 31, 2009, and July 1, 2010, we will here apply the earlier version of the statute. See

special lien and entered judgment against Pinnacle's "fee simple title" to the improvements, its options to sell the improvements or purchase the land, and its interest as a grantee under the deed to secure debt. Pinnacle appeals.

1. Pinnacle argues that the trial court erred as a matter of law in granting to Mainline a special lien on the building. Whether Mainline may claim a special lien here depends upon Pinnacle's interest in the building.

Pursuant to OCGA § 44-14-361 (a), materialmen may have a special lien in "real estate," which is defined in OCGA § 44-1-2 (a) (1) and (3) as including "[a]ll lands and the buildings thereon" or "[a]ny *interest* existing in, or issuing out of, or dependent upon land or the buildings thereon."[5]

Mainline contends, and the trial court's order finds, that Pinnacle has a fee simple interest in the building. By contrast, Pinnacle's brief extensively discusses estates for years and usufructs, and contends that Pinnacle's interest in the building amounts only to a usufruct. While we will discuss the various potential interests at issue more fully below, in general, a fee simple interest provides the owner with

_____

Laws 2000, p. 1589, §3.

[5] (Emphasis supplied.)

5

entire and absolute ownership and with an unconditional power of disposition,[6] while an estate for years is essentially a lease by which one person acquires a right to use real estate for a finite period "in as absolute a manner as may be done with a greater estate," so long as neither the property nor the person entitled to the reversionary interest in it is injured by that use.[7] A usufruct, by contrast, is created when the owner of real estate grants to another person the right to use and enjoy the property for a fixed time or at the will of the grantor, as in a landlord-tenant relationship, but no property interest arises in the grantee.[8] A materialman's lien may attach to the interests of a "true owner," that is, someone who has an estate or property interest in realty; it will not attach to a usufruct, which does not convey an ownership interest and is not subject to levy and sale.[9]

Pinnacle's argument that it possesses only a usufruct in the building fails, therefore, because it has admitted to having a property interest in the building. "A usufruct is sometimes referred to as a license to use. *The conveyance of a usufruct*

---

[6] OCGA § 44-6-20.

[7] OCGA § § 44-6-102, 44-6-103.

[8] OCGA § 44-7-1.

[9] *Jones v. E. I. Rooks & Son*, 78 Ga. App. 790, 792-793 (1) (52 SE2d 580).

6

*passes no property interest to the tenant.*"[10] In its answer to Mainline's complaint, Pinnacle admitted that it held property interests in the improvements, i.e., the building. This is an admission in judicio. "Under the rule of the Code and the decisions of this court thereunder, admissions made in pleadings constitute a conclusive presumption of law unless and until altered by amendment."[11] Pinnacle's reply brief before this Court also states that it has a "property interest" in the building.

Pinnacle attempts to argue that because this property interest was granted under the Rental Agreement, which conveyed only a usufruct in the land, this grant is not subject to lien because any ownership interest Pinnacle has is subordinate to KDA's reversionary interest in the building when the usufruct in the land terminates. However, this Court has determined that a materialman may assert a lien against "*whatever interest* his employer had in the property *at the time the work was done,*

---

[10] (Citations and punctuation omitted; emphasis supplied.) *Read v. Ga. Power Co.*, 283 Ga. App. 451, 453 (641 SE2d 680) (2007).

[11] (Citations omitted.) *Citizens & Southern Realty Investors v. L. G. Balfour Co.*, 152 Ga. App. 852, 853 (2) (264 SE2d 304) (1980).

7

*or the materials were furnished*."[12] At the time the work was done or the materials were furnished, Pinnacle by its own admission had a property interest in the building.

Here, the trial court's unappealed September 3, 2010, order on KDA's motion for summary judgment found that the agreements between Pinnacle and KDA severed ownership of the building from ownership of the land. In general, "any buildings placed upon the land of another, although by a person entitled to the use of the land, become part of the realty, and the title to the buildings becomes vested in the owner of the land."[13] However, this rule may be altered by a "special agreement otherwise."[14] As evidenced by the agreements, the parties here clearly intended to create a special agreement otherwise.[15]

---

[12] (Emphasis in original; emphasis supplied.) *Meco of Atlanta, Inc. v. Super Valu Stores, Inc.*, 215 Ga. App. 146, 148 (1) (449 SE2d 687) (1994), citing *James G. Wilson Mfg. Co. v. Chamberlin &c. Co.*, 140 Ga. 593, 593 (79 SE 465) (1913).

[13] (Citations and punctuation omitted.) *Johnson Central Svc. of Ga., Inc. v. Emory Univ.*, 170 Ga. App. 493, 496 (1) (317 SE2d 303) (1984) (based upon analysis of terms of rental/lease agreements, fraternity did not obtain title or estate in fraternity house, but rather had "use of the building" built on land owned by university).

[14] (Citation and punctuation omitted.) Id., citing *Powell v. Harris*, 39 Ga. App. 295, 296 (2) (147 SE2d 189) (1929).

[15] Georgia law contemplates severing ownership in land from ownership in a building on the land. See *Sawyer Coal & Ice Co. v. Kinnett-Odom Co.*, 192 Ga. 166, 174-175 (6) (14 SE2d 879) (1941) (a deed conveying a building may or may not

8

At issue here is what type of interest Pinnacle has in the building.

*(a) Fee simple interest.* Mainline contends, and the trial court found, that a lien could attach because Pinnacle has a fee simple interest in the building.[16] This is incorrect.

"An absolute or fee simple estate is one in which the owner is entitled to the entire property with *unconditional power of disposition* during his life and which descends to his heirs and legal representatives upon his death intestate."[17] The Rental

---

convey the land on which it stands, depending on the intent of the parties); *Consolidated Warehouse Co. v. Smith*, 55 Ga. App. 216, 220 (189 SE 724) (1937) (a scale attached to the floor of a warehouse building was a permanent fixture and passed with title to the warehouse when the warehouse was sold, where title to the warehouse was vested in one party but title to the land on which the warehouse was located was vested in another). Most of our cases addressing this issue involve buildings that may be removed from the premises. See *Conley Housing Corp. v. Robert E. Coleman*, 211 Ga. 835, 838 (89 SE2d 482) (1955) (lessee had "title to all improvements," which were moveable, privately owned apartments attached to government land); *Barwick v. Roberts*, 192 Ga. 783, 785 and 787-788 (16 SE2d 867) (1941) (farmer had estate for years in land, but had ownership in removable farmers' market building). There is no indication of whether the office building in the instant case can be removed; the parties' agreements make no mention of removal.

[16] We note, at the outset, that only the summary judgment order that is the subject of this appeal finds that Pinnacle has a "fee simple" interest in the building; the prior, unappealed summary judgment order merely states, without more, that Pinnacle has "title" to the building.

[17] (Emphasis supplied.) OCGA § 44-6-20.

Agreement and the Option Agreement clearly indicate that no fee interest was created. Fee interests in general run indefinitely,[18] but Pinnacle's interest terminates on November 30, 2012. On that date, the Rental Agreement states that Pinnacle will own the improvements only "until expiration of the term or sooner termination of this Rental Agreement." The Rental Agreement further provides that Pinnacle "will own the Improvements and *will sell the Improvements to [KDA]* as the Improvements are completed each year."[19] This language indicates that the parties did not intend to create a fee interest[20] because such language is contrary to the "unconditional power of disposition" required to establish fee simple ownership.[21] Pinnacle is clearly not free to sell the building to a party other than KDA, thus, Pinnacle does not have a fee simple interest.

---

[18] See generally *Jenkins v. Shuften*, 206 Ga. 315, 318 (1) (57 SE2d 283) (1950).

[19] (Emphasis supplied.)

[20] OCGA § 44-6-21.

[21] The definition of "Property," by the PSFO's own terms, included land that Pinnacle sold to KDA. Notwithstanding Pinnacle's potential purchase rights under the option contract, "something that is capable of ripening into a fee simple title, is not at present a fee simple title." *Union Camp Corp. v. Youmans*, 227 Ga. 687, 696 (4) (182 SE2d 468) (1971) (punctuation omitted).

*(b) Estate for years.* The agreements between KDA and Pinnacle, despite some conflicting provisions, evidence the intent of the parties to create an estate for years rather than a usufruct in any improvements, including the building at issue here.

The Rental Agreement indicates, and the trial court's unappealed summary judgment order of September 3, 2010, finds, that Pinnacle had a usufruct in the land and ownership rights in the building. Even assuming there are ambiguities between the agreements as to whether they involve a usufruct or an estate for years, an analysis of their terms, as this Court has done to make just such a determination in other instances, clearly shows the parties' intent to create an estate. While there is a rebuttable presumption that a lease for less than five years is a usufruct, whether an estate in the land passes to the tenant or he obtains only a usufruct depends on the parties' intent, not the length of the term.[22] Here, the following terms contained in the agreements indicate that the parties intended to create an estate for years: Pinnacle is required to provide broad, general insurance;[23] Pinnacle must pay all ad valorem property taxes on the improvements, and while estates for years are taxable, usufructs

---

[22] See *Diversified Golf, LLC v. Hart County Bd. of Tax Assessors*, 267 Ga. App. 8, 10-11 (598 SE2d 791) (2004).

[23] *DeKalb County Bd. of Tax Assessors v. W. C. Harris & Co.*, 248 Ga. 277, 279-280 (2) (282 SE2d 880) (1981).

11

are not;[24] finally, if the buildings are destroyed, Pinnacle bears the loss and must rebuild them, which means that "destruction or damage to the property does not relieve the lessee from its duties and obligations under the lease. These provisions are indicative of the conveyance of an estate for years."[25]

"An estate for years carries with it the right to use the property in as absolute a manner as may be done with a greater estate, provided that the property or the person who is entitled to the remainder or reversion interest is not injured by such use."[26] "An estate for years may be subjected to the lien."[27]

Even if Pinnacle does not have title to the building on which the lien is claimed and title is in a third party not subject to the suit, this "will not bar an action for foreclosing the statutory lien of a materialman because if the defendant has *any interest* in the premises upon which the lien can take effect, that interest is bound.

---

[24] See *Diversified Golf*, supra at 10.

[25] (Footnote omitted.) *Jekyll Development Assocs., L. P. v. Glynn County Bd. of Tax Assessors*, 240 Ga. App. 273, 276 (5) (523 SE2d 370) (1999).

[26] OCGA § 44-6-103.

[27] *Sasser & Co. v. Griffin*, 133 Ga. App. 83, 85 (1) (210 SE2d 34) (1974). Accord *James G. Wilson Mfg. Co.*, supra. See also *Jekyll Development Assocs.*, supra 275 (2) ("An estate for years may be encumbered or somewhat limited without being reduced to a usufruct") (footnote omitted).

*Every legal interest* in real and personal property can be seized and sold."[28] Here, Pinnacle "had an estate for years in the leased premises, and . . . a materialman's lien could attach to and be enforced against such interest, subject to the conditions of the lease."[29] Thus, we affirm the trial court, because "[a] grant of summary judgment must be affirmed if right for any reason, whether stated or unstated. It is the grant itself that is to be reviewed for error, and not the analysis employed."[30]

We note that any decision we make here may be mooted by the parties' agreements. Here, the Option Contract between the parties specifically provides that at the closing of any sale, Pinnacle must provide the improvements, i.e., the building, "free of all claims, liens, and encumbrances." There is no way for this Court to know whether KDA will, in fact, exercise its option to purchase the building. If the option contract is not exercised by either party, the lease expires on November 30, 2012.

---

[28] (Citations and punctuation omitted; emphasis supplied.) *Meco of Atlanta*, supra.

[29] *James G. Wilson Mfg. Co.*, supra.

[30] (Citation and punctuation omitted.) *Dan J. Sheehan Co.*, supra at 790 (1), n. 11.

13

Whether the lien then applies to KDA's reversionary interest is a matter beyond the scope of this opinion.[31]

2. In its second and third enumerations, Pinnacle contends, respectively, that the trial court erred in granting a special lien on Pinnacle's contractual option rights, and on Pinnacle's rights under a deed to secure debt. However, Pinnacle did not raise the option rights argument below, and in the case of the deed to secure debt, put forth a completely different argument.

It is well-settled that "issues presented for the first time on appeal furnish nothing for us to review[,] for this is a court for correction of errors of law committed by the trial court where proper exception is taken."[32] Nor may Pinnacle alter the course of its arguments mid-stream, raising issues on appeal that were not raised

---

[31] We note that absent consent of a landlord to the *contract* under which the improvements were made, a landlord's equitable interest in improvements is not subject to lien. If the lien here was filed only against the landlord's reversionary interest rather than Pinnacle's legal interest, "it would indirectly . . . subject the landlord's equitable interest in improvements to the leasehold to a lien asserted by [the] materialman. It is well settled that one cannot do indirectly that which the law does not allow to be done directly." *Meco of Atlanta*, supra. (Citation omitted).

[32] (Citations and punctuation omitted.) *CPD Plastering, Inc. v. Miller*, 284 Ga. App. 172, 174 (1) (643 SE2d 392) (2007). See also *Venture Design, Ltd. v. Original Appalachian Artworks, Inc.*, 197 Ga. App. 432, 434 (3) (398 SE2d 781) (1990) (contractor could not argue for the first time on appeal that an indemnity agreement was contrary to public policy under applicable statute and was therefore invalid).

before the trial court. "Appellate courts do not consider whether summary judgment should have been granted for a reason not raised below because, if they did, it would be contrary to the line of cases holding that a party must stand or fall upon the position taken in the trial court."[33]

*Judgment affirmed. Miller, P. J., and Branch, J., concur.*

---

[33] (Citation and punctuation omitted.) *Wellons, Inc. v. Langboard, Inc.*, 315 Ga. App. 183, 186 (1) (726 SE2d 673) (2012).