**SECOND DIVISION**
**BARNES, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**March 12, 2013**

# In the Court of Appeals of Georgia

A12A2291. GRIFFIN BUILDERS et al. v. SYNOVUS BANK.

McMILLIAN, Judge.

Griffin Builders, LLC, Brenda Griffin and Eric Griffin appeal the trial court's order granting summary judgment to Synovus Bank on their complaint seeking, inter alia, monies derived from excess proceeds allegedly obtained at a foreclosure sale. We affirm for the reasons set forth below.

On January 26, 2005, Griffin Builders signed a note in the amount of $502,688, in favor of CB&T Bank of Middle Georgia, Synovus's predecessor in interest (CB&T and Synovus hereinafter collectively referred to as the "Bank"). This note was secured by a security deed on Lot 5 of the Mill Pond Plantation Subdivision (the "Mill Pond Security Deed"). On May 16, 2008, Griffin Builders signed a renewal note, which reduced this debt to $455,527 ("Note 20") and which was also secured

by the Mill Pond Security Deed, as well as individual guaranties signed by Eric and Brenda Griffin. The purpose of Note 20, as referenced on its face, was to "refinance [a] spec loan."

On April 29, 2005, Griffin Builders signed a separate note in the amount of $35,525 in favor of the Bank. This note was secured by a security deed with respect to Lots 1, 2, 3, 4, 5, 6, and 7 of the Griffin Walk Subdivision (the "Griffin Walk Security Deed"). On May 16, 2008, Griffin Builders executed a renewal note in favor of the Bank in the amount of $121,108, with the stated purpose of renewing a "spec loan" ("Note 18"). Note 18 states that it is secured by guaranties signed by Eric and Brenda Griffin, as well as by the Griffin Walk Security Deed, with a parenthetical reference to "(Lot 5 Griffin Walk S/D)." Under the terms of the Note, default occurs if Griffin Builders fails to make a payment under the note or fails "to pay, or keep any promise[] on any debt or agreement [Griffin Builders has with the Bank]." The same day, Griffin Builders signed a separate $1,200 renewal note to refinance a spec loan with respect to construction on Lot 2, Griffin Walk Subdivision ("Note 21"). As with Note 18, Note 21 states that it was secured by the Griffin Walk Security Deed, but with a parenthetical reference to "(Lot 2 Griffin Walk S/D)," as well as by guaranties signed by the Griffins. Note 21 contains the same default provisions as Note 18.

2

Both the Mill Pond and the Griffin Walk Security Deeds provide, in relevant part: "This Security Instrument secures to [the Bank]: (a) the repayment of the Loan, and all renewals, extensions and modifications of the Note; [and] (b) the repayment of any and all other Indebtedness now owing or which may hereafter be owing by [Griffin Builders] to [the Bank], however incurred."

At some point, Griffin Builders apparently failed to meet its obligations, at least under Notes 18 and 20, because the Bank made two written demands for payment on an outstanding balance of $479,214.40 on Note 20 and a balance of $75,525.75 on Note 18. In addition, the Bank sent Griffin Builders a "Notice of Sale Under Power," on each of the two security deeds. The Bank also placed notices of the sales in the appropriate legal organ with regard to each security deed. At a foreclosure sale on June 2, 2009, the Bank purchased Lot 5 of the Mill Pond Plantation Subdivision under the Mill Pond Security Deed, for $281,320. The Bank attempted to obtain confirmation of this foreclosure sale, but confirmation was denied. At a foreclosure sale on June 2, 2009, the Bank acquired Lots 2 and 5 of the Griffin Walk Subdivision for a bid of $76,352, which the Bank asserts is the approximate amount of the debt owed under both Note 18 and Note 21. On June 30, 2009, the Bank sold Lots 2 and 5 of Griffin Walk to a third party for a total purchase price of $80,000.

Griffin Builders and the Griffins (hereinafter collectively referred to as "Griffin Builders") filed their complaint seeking to recover "excess proceeds" on August 16, 2010. The complaint alleges that the Bank paid less than the appraised fair market value for the properties and then sold them to a third party and pocketed the difference. Griffin Builders seeks to recover these "excess proceeds" from the Bank. The Bank moved for summary judgment on April 1, 2011, and Griffin Builders filed their opposition to the summary judgment motion on May 19, 2011. The next day, May 20, 2011, the trial court entered an order granting the Bank's motion for summary judgment, after finding that the motion was unopposed. This appeal ultimately resulted.

On appeal, Griffin Builders asserts that the grant of summary judgment was improper because genuine issues of material fact exist as to whether 1) the Bank was obligated under the terms of the parties' security agreement to disburse excess proceeds from its foreclosure sale with regard to the Griffin Walk properties; and 2) the Bank was unjustly enriched by its retention of the proceeds of the sale of the Griffin Walk properties to a third party after confirmation was denied on the Mill Pond foreclosure sale.

4

We note first that Griffin Builders failed to file a timely response to the Bank's motion for summary judgment. Under a scheduling order issued by the trial court, Griffin Builders was required to respond to the Bank's motion by May 6, 2011 , and their response, filed on May 19, was 18 days late.

> Nevertheless, there is no such thing as a default summary judgment. By failing to respond to a motion for summary judgment, a party merely waives his right to present evidence in opposition to the motion. It does not automatically follow that the motion should be granted. A motion for summary judgment should not be granted unless it affirmatively appears from the pleadings and the evidence that the party so moving is entitled to prevail.

(Citation and punctuation omitted.) *Ackerman & Co. v. Lostocco*, 216 Ga. App. 242, 244 (1) (454 SE2d 792) (1995).

In any event, Griffin Builders' responsive filings contain no additional evidence in opposition to the Bank's motion. In particular, Griffin Builders failed to file any evidence relating to the Bank's resale of the Griffin Walk properties to the third party. Although the "Plaintiffs' Concise Statement of Material Facts For Which There Exists Material Facts to Be Tried" filed by Griffin Builders references "deed records obtained from the Superior Court attached collectively as 'Exhibit B,'" purportedly relating to these resales, no such exhibit appears in the appellate record.

To the extent that the record is somehow incorrect, we note that [Griffin Builders], as appellant[s], bore the burden of ensuring an accurate and complete record on appeal. In order for an appellate court to make a determination about the correctness of a judgment at issue, it is the appellant's duty to include in the record on appeal the items necessary for the appellate court to objectively review the evidence and proceedings giving rise to the judgment.

(Citation and punctuation omitted.) *Strickland v. Leake*, 311 Ga. App. 298, 303 (715 SE2d 676) (2011) (on motion for reconsideration). Thus, in considering Griffin Builders' arguments on appeal, we are left with only an admission by the Bank that it sold Lots 2 and 5 of Griffin Walk for $80,000 to a third party on June 30, 2009, approximately four weeks after the foreclosure sale.

1. The loans on the Griffin Walk properties were governed by the terms of the Griffin Walk Security Deed, which granted the Bank the power to sell the properties "at public auction to the highest bidder," and further provided that the Bank itself could purchase the properties. "It is well settled that a [lender] may purchase the mortgaged property at a sale by him under a power of sale in the [security deed], if by the terms of the [deed] he is expressly authorized to do so." (Citations and punctuation omitted.) *Miller Grading Contractors v. Georgia Fed. Sav. & Loan Assoc.*, 247 Ga. 730, 732 (1) (e) (279 SE2d 442) (1981). Although Georgia law

6

requires that the power of sale be fairly exercised, that requirement does not include a duty to sell the property at the property's fair market value. *Kennedy v. Gwinnett Commercial Bank*,155 Ga. App. 327, 328 (1) (270 SE2d 867) (1980); OCGA § 23-2-114. And "[i]f the creditor has no intention of seeking a deficiency against the debtor there is little reason for the creditor to be concerned with the relationship between the sales price and market value of the property." Frank S. Alexander, Ga. Real Estate Finance and Foreclosure Law § 8:5 (2012–2013 ed.). Therefore, "when a power of sale is exercised all that is required of the foreclosing party is to advertise and sell the property according to the terms of the instrument, and that the sale be conducted in good faith." (Citation and punctuation omitted.) *Kennedy v. Gwinnett Commercial Bank*,155 Ga. App. at 330 (1). An inadequate price standing alone, therefore, is not sufficient to find that the sale was not conducted in good faith. Rather, "[i]t is only when the price realized is grossly inadequate and the sale is accompanied by either fraud, mistake, misapprehension, surprise or other circumstances which might authorize a finding that such circumstances contributed to bringing about the inadequacy of price that such a sale may be set aside by a court of equity. " (Punctuation omitted.) Id. See also *Cartersville Developers v. Georgia Bank & Trust*, 292 Ga. App. 375, 377 (664 SE2d 783) (2008).

In this instance, the Bank bid $76,352, which it asserts was the amount of Griffin Builders' outstanding debt on Notes 18 and 21. And indeed, the Bank's demand letters to Griffin Builders reflect that the amount due and owing on Note 18 at the time was $75,525.75. Although the Bank did not make a formal demand under Note 21, that note was originally for $1200 and also was secured by the Griffin Walk Security Deed, which provided that the Griffin Walk property referenced in the deed, including Lots 2 and 5, secured any and all indebtedness that Griffin Builders owed to the Bank. Griffin Builders presented no evidence to dispute the Bank's figures regarding the amount of the indebtedness owed on Notes 18 and 21 relating to Lots 2 and 5 of Griffin Walk. Thus, Griffin Builders has failed to point to any evidence establishing that the Bank acquired any excess proceeds in the foreclosure sales on these properties.[1]

The Griffin Walk Security Deed further provides that the Bank "shall convey to the purchaser indefeasible title to the Property" and that Griffin Builders appointed the Bank its "agent and attorney-in-fact to make such conveyance." And under

---

[1] Although Griffin Builders presented appraisals showing a value of $104,000 on Lot 2 and $116,000 on Lot 5 of Griffin Walk , such evidence would go to the fair market value of the properties, which is not at issue here. Moreover, Griffin Builders presented no evidence of fraud, mistake, misapprehension, surprise or other circumstances sufficient to undercut the foreclosure sale itself.

Georgia law, the effect of the foreclosure sale is to transfer the borrower's rights to the purchaser. As one commentator explained:

> The effect of the foreclosure sale is to terminate the debtor's equity of redemption and transfer it to the foreclosure sale purchaser. Assuming that a foreclosure is conducted in accordance with contractual and statutory requirements, the foreclosure sale purchaser acquires the rights that the former owner had at the time the former owner executed the security deed which was the subject of the foreclosure.

Alexander, Ga. Real Estate Finance and Foreclosure Law § 8:8. See *Hornsby v. Holt*, 257 Ga. 341, 342-343 (1) (359 SE2d 646) (1987); *Interchange Drive, LLC v. Nusloch*, 311 Ga. App. 552, 556 (716 SE2d 603) (2011). Following the foreclosure sale, therefore, Griffin Builders had no further rights in the property.

Accordingly, the approximately $3,648 the Bank realized in the third-party sale cannot be considered excess proceeds under the terms of the Griffin Walk Security Deed, and Griffin Builders has no claim against the Bank as to these funds.

2. We find no merit to Georgia Builder's argument that the denial of confirmation as to the Mill Pond property somehow affected the Bank's rights with regard to the Griffin Walk properties. Even if the failure to obtain confirmation of the foreclosure sale on the Mill Pond property may prevent the Bank from pursuing a

deficiency judgment under Note 20 with regard to that property, we find no authority to support the argument that the denial of that confirmation had any affect on the Bank's ability to sell the Griffin Walk property, which was financed under separate notes and purchased in a separate foreclosure sale, on a separate date, pursuant to a separate security deed.

> The only purpose of [confirmation proceedings under] OCGA § 44–14–161 is to subject the creditor's potential deficiency claim to the condition that the foreclosure sale under power be given judicial approval. Its purpose is to pass upon the notice, advertisement and regularity of the sale and to re-insure that the property was sold for a fair value. It provides debtors with formidable protection against gross deficiency judgments.

(Footnote omitted.) *Howser Mill Homes v. Branch Banking and Trust Co.*, 318 Ga. App. 148, 151 (1) (733 SE2d 441) (2012). The record contains no evidence that the Bank sought to confirm the foreclosure sale as to the Griffin Walk properties or has sought to recover any deficiency against Griffin Builders arising out of Notes 18 and 21. The issue of confirmation, therefore, simply has no relevance to the sale of the Griffin Walk properties.

"Thus, we affirm the trial court, because a grant of summary judgment must be affirmed if right for any reason, whether stated or unstated." (Punctuation and

footnote omitted.) *Pinnacle Properties V v. Mainline Supply of Atlanta*, __ Ga. App.

__ (1) (b) (735 SE2d 166) (2012).

    *Judgment affirmed. Barnes, P. J., and McFadden, J., concur.*