**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**March 18, 2013**

# In the Court of Appeals of Georgia

A12A2231. CALHOUN, GA NG, LLC v. CENTURY BANK OF   RA-102
        GEORGIA.

RAY, Judge.

Century Bank of Georgia (the "Bank") and Calhoun, GA NG, LLC ("Calhoun") are owners of adjoining tracts of land in a shopping center located on Highway 53 in Calhoun. The parties agree that they are subject to the terms, easements, and restrictive covenants memorialized in an agreement executed and recorded by their predecessors in title. The Bank filed a petition for declaratory judgment in the Superior Court of Gordon County, seeking a ruling that the agreement did not prevent the Bank from constructing a convenience store and a gas fueling facility on its property. The Bank later moved for summary judgment, which

the trial court granted in its favor. Calhoun appeals from that order, and finding no error, we affirm.

Summary judgment is appropriate if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1] "On appeal from the grant or denial of summary judgment, we conduct a de novo review, with all reasonable inferences construed in the light most favorable to the nonmoving party."[2]

So viewed, the record shows that the Bank owns a 5.42 acre tract of land (Tract 2) along Highway 53, which is bounded on the west by Calhoun's parcel of land (Tract 1). In 1993, Calhoun's predecessor-in-title sold a portion of its property to the Bank's predecessor-in-title to open a grocery store. On August 25, 1993, in conjunction with this sale, the predecessors-in-title to the Bank and to Calhoun executed a document titled Reciprocal Easement and Restrictive Covenant Agreement (the "Agreement"). The grocery store subsequently went out of business, and the last business to operate on Tract 2 was a car dealership that closed in 2009. The Bank

---

[1] OCGA § 9-11-56 (c).

[2] (Footnote omitted.) *Alston & Bird LLP v. Mellon Ventures II, L. P.,* 307 Ga. App. 640 (706 SE2d 652) (2011).

2

acquired Tract 2 by foreclosure and now seeks to construct a convenience store and gas fueling facility on the property.

The parties do not dispute that the Agreement runs with the land and is binding upon the parties that created it and their successors in title. The Agreement contains six sections, including Article I which describes the reciprocal easements in favor of both Tract 1 and Tract 2. The specific easements outlined in Article I of the Agreement that pertain to the Bank's proposed development are: (1) easements across the passage over areas on Tract 2, now or hereafter constructed, for sidewalks, entrances, drives, lanes, service drives, and parking; (2) easements for utilities and drainage; and (3) easements for the maintenance of drives, lanes, or parking, now or hereafter constructed. The specific restrictive covenants, outlined in Article II of the Agreement, that pertain to the Bank's proposed development are: (1) "no fences, walls, or barriers . . . shall be permitted which would impair the visibility of the Tracts from the adjoining roads"; (2) a requirement of five parking spaces per every one thousand square feet of building area; (3) a requirement that Tract 2 preserve the flow of traffic and parking to Tract 1; and (4) that no walls will be built between the tracts.

Article V of the Agreement, titled "No Dedication," states that "subject to the limitations contained in Articles I and II hereof, the owners from time to time of the

3

Tracts shall have the right to expand, alter, modify or demolish all or part of the buildings now or hereafter constructed on said Tracts, or develop said Tracts in any manner they see fit."

In its summary judgment order, the trial court ruled that

the 'No Dedication' clause of Article V of the Agreement is clear and unambiguous and allows [the] [o]wners of Tract 1 and Tract 2 to construct buildings or other structures on the respective Tract in any manner they see fit, as long as the development complies with the easements and restrictive covenants set out in Article I and II.

1. Calhoun argues that the trial court erred in finding that the Agreement contained a reservation of rights allowing the owner of Tract 2 to alter easements on its property. Thus, Calhoun contends, the trial court erred in awarding summary judgment in favor of the Bank because the Bank's proposed development alters or eliminates fixed easements across Tract 2 that benefit Calhoun's property, including "a significant portion of the parking area directly in front of the buildings and other improvements on [Calhoun's] property[,]" in violation of Georgia law . We disagree.

The Supreme Court of Georgia has held that, consistent with the majority rule in this country, "an easement with a fixed location cannot be substantially changed or relocated without the express or implied consent of the owners of both the servient

4

estate and the dominant estate."[3] However, the exception to this general rule "provides that the owner of the servient estate has the right to relocate an easement if the instrument creating the easement so provides."[4] This is so because "if the language of an express grant or reservation of an easement authorizes it, the location of an easement may be changed in accordance with the agreement."[5]

Accordingly, the issue before us is whether the trial court correctly concluded that the terms of the Agreement authorized the relocation of easements benefitting Tract 1. In construing the language of an express easement, we apply the rules of contract construction.[6] The cardinal rule of contract construction is to ascertain the parties' intent and "[w]here the contract terms are clear and unambiguous, the court will look to that alone to find the true intent of the parties."[7] Further, "[t]o determine the intent of the parties, all the contract terms must be considered together in arriving

---

[3] (Footnote omitted.) *Herren v. Pettengill*, 273 Ga. 122, 123 (2) (538 SE2d 735) (2000). Accord *SunTrust Bank v. Fletcher*, 248 Ga. App. 729 (548 SE2d 630) (2001).

[4] (Citation omitted.) *SunTrust*, supra at 732.

[5] (Citations and punctuation omitted.) Id.

[6] See *Municipal Elec. Auth. of Ga. v. Gold-Arrow Farms, Inc.*, 276 Ga. App. 862, 866 (1) (625 SE2d 57) (2005).

[7] (Citation and punctuation omitted.) Id.

at the construction of any part, and a construction upholding the contract in whole and every part is preferred."[8] Absent an ambiguity that cannot be resolved by the rules of construction, the interpretation of contractual terms is a question of law for the court.[9]

In *SunTrust Bank v. Fletcher*,[10] Fletcher was successor in title to a shopping mall developer. The same developer conveyed to SunTrust's predecessor in title a parcel of land along with the following easement: a "non-exclusive easement license, right and privilege of passage for pedestrians and vehicular ingress and egress over and across all portions of the common areas of the adjacent shopping center."[11] In the same deed, the developer retained certain rights with the following language: "The adjacent property owner shall have the right to relocate buildings, walkways, and parking areas in any manner whatsoever and the easement . . . shall then apply to the area so established."[12] Fletcher put in parking spaces that blocked SunTrust's drive-through lane, and SunTrust sued. On appeal, this Court held that the language in the

---

[8] (Citations omitted.) Id.

[9] Id. at 167 (1).

[10] Supra.

[11] Id at 730.

[12] (Emphasis omitted.) Id. at 732.

deed reserving the right to relocate parking areas granted Fletcher the right to

rearrange buildings, parking and walkways, thus forcing SunTrust to rearrange its

point of egress onto its property, as long as the easement was maintained.[13]

In *Wilcox Holdings, Ltd. v. Hull*,[14] two adjoining properties were subject to a

declaration that provided for a "permanent mutual reciprocal and non-exclusive

easement, license, right and privilege of passage and use, both pedestrian and

vehicular, for the purpose of ingress and egress over all roads and driveways and

parking upon all parking areas located from time to time upon [both properties]."[15]

The declaration contained an exception that "the owners of [the tracts] shall have the

right to relocate buildings, walkways and parking areas in any manner whatsoever,

and the easement, license, right and privilege granted by this instrument shall then

apply to the areas so established."[16] This Court held that, despite the objections of the

adjoining landowner who lost parking spaces and the use of its drive-through

---

[13] Id. R 731-732.

[14] 290 Ga. App. 179 (659 SE2d 406) (2008).

[15] Id. at 180.

[16] (Punctuation omitted.) Id.

window, the declaration's language granted Hull the right to "rearrange his building and parking spaces so long as the easement is maintained."[17]

In the present case, Article I of the Agreement states that Calhoun, as the owner of Tract 1, has an easement over and across Tract 2's "sidewalks, entrances, drives, lanes, service drives and parking areas, *which are now or may hereafter from time to time be constructed and used for pedestrian and vehicular traffic.*"[18] Article III provides that "subject to the limitations contained in Articles I and II hereof, the owners from time to time of the tracts *shall have the right to expand, alter, modify all or part of the buildings now or hereafter constructed on said tracts, or develop said tracts in any manner they see fit.*"[19] Although the terms of the Agreement in the present case do not specifically address the relocation of easements, as the agreements in *Fletcher* and *Wilcox Holdings* do, it is clear from the language in Article I that the Agreement contemplates that Tract 2 might change to include, inter alia, the construction of additional sidewalks, drives, and parking areas and that Tract 1 would retain an easement across these new paths. It is also clear from Article III of the

---

[17] Id. at 182 (1).

[18] (Emphasis supplied.)

[19] Emphasis supplied.

8

Agreement that the parties intended to include a reservation of right granting the property owners the right to expand, modify, or demolish all or part of the buildings located on their property, so long as the easements and restrictive covenants granted by the Agreement continue to apply to the areas so established. This interpretation of the parties' intent is further supported by Article III, discussing zoning, which states that the owner of Tract 1

> acknowledges and agrees that [the owner of Tract 2] may desire to demolish, construct or expand the building located on Tract 2 as depicted on the Site Plan, and the owner of Tract 1, for itself and its successors and assigns, hereby approves any such expansion and covenants and agrees that it will support . . . any necessary zoning . . . which may be necessary to accomplish such expansion. Accordingly, as in *SunTrust* and *Wilcox Holdings*, we find that the Bank's proposed development does not violate the terms of the Agreement, so long as Tract 2 retains easements as described in the Agreement and that those easements apply to the areas so established.[20]

2. Calhoun next contends that the trial court's grant of summary judgment was in error, arguing that the Bank's proposed development does not comply with the

_____

[20] Compare *Sloan v. Rhodes*, 274 Ga. 879, 880 (560 SE2d 653) (2002) (where deed creating easement does not contain express reservation, owner of servient estate cannot substantially change or relocate fixed easement).

9

terms of the Agreement relating to the intent of the Agreement or to the Agreement's requirements pertaining to visibility and parking. However, Calhoun did not raise these objections either in its written brief in opposition to summary judgment or during the summary judgment hearing.[21] It is well settled that "issues presented for the first time on appeal furnish nothing for us to review, for this is a court for correction of errors of law committed by the trial court where proper exception is taken."[22] Further, "[a]ppellate courts do not consider whether summary judgment should have been granted [or denied] for a reason not raised below because, if they did, it would be contrary to the line of cases holding that a party must stand or fall upon the position taken in the trial court."[23]

*Judgment affirmed. Miller, P. J., and Branch, J., concur.*

---

[21] Although Calhoun does mention the visibility and parking requirements in its brief in opposition to summary judgment, it does so only to argue that the Bank's "[b]rief seems to take the position that isolated compliance with provisions of the Agreement is sufficient authorization to allow unilateral development of the property." Calhoun never argued the issue currently before us before the trial court, whether the Bank's proposed development fails to comply with Agreement because the proposed fuel station and convenience store block visibility, or because the number of parking spaces may be insufficient.

[22] (Punctuation and footnote omitted.) *Pinnacle Properties V, LLC v. Mainline Supply of Atlanta, LLC*, __ Ga. App. __ (2) (735 SE2d 166, 172) (2012).

[23] (Punctuation and footnote omitted.) Id.